ROSE HIETT, APPELLANT, v. WESLEY HIETT, APPELLEE.

FILED JUNE 8, 1905. No. 13,850.

A contract between husband and wife, made after and in consequence of severance of the marital relation and permanent separation, and providing for a division of property, and containing mutual releases of rights and obligations relative thereto, will be re-

spected by the courts as presumably fair and valid, and a just and equitable adjustment of the matters of which it treats. But the courts will scrutinize such transactions closely, without too much regard for formal rules of pleading and procedure, and see to it that no unconscionable advantage is taken through fraud or intimidation, or even by reason of ignorance, passion or improvidence.

Appeal from the district court for Valley county: JAMES N. PAUL, JUDGE. *Affirmed.*

*A. Norman and H. Westover,* for appellant.

*E. J. Clements and Clements Bros., contra.*

AMES, C.

The district court granted the petition of a wife for a decree of absolute divorce on the ground of extreme cruelty, but denied permanent alimony. She appeals from the latter part of the decree, and there is no cross-appeal.

At the time of the marriage, in 1887, both of the parties were well advanced in years; she being a widow, the mother of six children varying in age from five to seventeen years, and he a widower, the father of four children of mature ages, all of whom had ceased to reside with him. He and his wife and her children resided together and constituted the family until the children, one after another, reached years of maturity and established homes of their own, and thereafter the marriage relation subsisted until 1902, when a scene of violence occurred, and a final separation took place, and the wife sought and found an asylum with her married sons and daughters. There was no issue of the marriage, and the parties, at the time it was contracted, were both impecunious, except for an inconsiderable amount of money possessed by each, which was consumed by family expenses. The children of the wife, as long as they remained members of the household, contributed by their labor and earnings to the common fund, and were maintained out of it, and from time to

10

time as the boys went away and established homes of their own, they were given articles of personal property and moderate sums of money aggregating several hundreds of dollars in amount and value. The family were laborious and frugal, except that the husband was addicted to the excessive use of intoxicants, and by the course of life indicated, which can be better imagined than described, and by the rise in the value of land bought and used for a farm and family homestead, had accumulated, at the time of the separation, property of a value variously estimated by witnesses, but probably worth not far from $6,000, subject to an indebtedness secured by a mortgage on the farm of $2,600, leaving a surplus of say $3,400 to $3,600. The personal property consisted of about a thousand dollars' worth of neat cattle, and of other live stock, and of utensils, such as are usually kept on a farm, to the estimated value of about $1,500.

A few days after the separation, the husbands of two of the daughters of the plaintiff and two of her sons visited the defendant, and made an agreement with him on her behalf for a perpetual separation thereafter, and for a division of property in contemplation and consideration thereof. For that purpose they visited the farm of the defendant, and inspected the premises and acquainted themselves with the quantity and character of his possessions. It is not proved that he was guilty of any fraud, concealment or intimidation in the transaction, or that they did not acquire fully and accurately all the information they desired. The plaintiff was not present, she having entrusted the protection of her interests to the persons named. After the matter had been amicably adjusted to the apparent satisfaction of all persons concerned, the plaintiff was called upon to attend, with the defendant and the intermediaries, at the offices of a firm of attorneys in a neighboring village, where the agreement was reduced to writing, and executed by both parties in the manner prescribed by law for the execution and

acknowledgment of deeds of real estate. The instrument recited the occasion and purpose of its execution, viz., the perpetual separation of husband and wife, the release by the latter of her dower and homestead rights in the land, and her interest in so much of the personal estate as was not set apart to her in severalty and freed from the claims of her husband, and which consisted of 28 of the 50 head of neat cattle and a horse, harness and buggy, certain articles of household furniture, certain domestic fowls, and 50 bushels each of corn and oats. What all these articles were worth it is difficult, if not impossible, to ascertain; the neat cattle alone probably not far from $500, and the rest from $100 to $200, or possibly more. Doubtless the value, both of what was taken and of what was left, was considerably greater for use than for sale. The instrument concluded with mutual releases of property, and marital rights and obligations, except the right of either party to prosecute an action for a divorce. A division and separation of the property pursuant to the agreement took place at once, and shortly afterwards this action was begun. The answer pleaded this instrument in bar of the demand of the petition for permanent alimony, and the reply assails it, in general terms, as being "unfair and unjust," and as having been obtained from the plaintiff in consequence of threats and ill usage by the defendant, and of her ignorance of her rights in the property divided. But there is no averment of any specific act or fact of fraud, ill-usage or intimidation with respect to making or carrying out of the agreement, and, as we have said, none is proved, and we are cited to neither principle nor authority for holding that any will be presumed. The whole tenor of the argument of counsel for appellant is that the agreement was improvidently made. Whether such fact, if it existed, would authorize the court to set aside or disregard the instrument, we are not called upon to decide, and do not decide. The weight both of reason and authority is that such agreements, made after separation, are, if fair and free from fraud,

imposition or undue means, in furtherance of good morals and in accord with sound policy. They stand upon a quite different basis from those made in contemplation and consideration of future separation. *Daniels v. Benedict,* 97 Fed. 367; *Galusha v. Galusha,* 116 N. Y. 635, 22 N. E. 1114. No prior decision of this court in conflict herewith has been brought to our attention. In *Campbell v. Campbell,* 73 Ia. 482, 35 N. W. 522, the only matter in litigation was temporary alimony, or "suit money," as it is called, which an agreement and division like that in controversy does not affect, and which in this case may be regarded as expressly excepted by the terms of the instrument itself. Whatever else is discussed in the opinion is mere *obiter.* In *McKnight v. McKnight,* 5 Neb. (Unof.) 260, no contract of settlement and mutual releases, and no final division of property, was either pleaded or proved. The husband had conveyed certain property to his wife because of the separation, but it was not shown that the conveyance was either made or accepted as a final adjustment of their marital rights.

We do not, however, intend to commit ourselves to the doctrine contended for by appellee, and which is, perhaps, held by some of the authorities, that an instrument like that under discussion is to be treated in all respects like other contracts upon a valid consideration between parties *sui juris,* and impeachable for fraud or duress only by compliance with the strict rules of procedure and proof applicable to suits involving such agreements. While there is no presumption against the fairness and good faith of such arrangements, we think that the presumption in their favor is not so strong as in cases of contracts between parties not so related, and that public policy, as well as due regard for the disabilities of the "weaker vessel," requires that the court should scrutinize them closely, without too much respect for formal rules of pleading and procedure, and see to it that no unconscionable advantage obtained through fraud or intimidation, or even by reason of ignorance, improvidence or passion, is availed of to the

unjust benefit of the stronger and more capable or more crafty spouse. We do not find, however, any of these elements in the record before us. The persons who made the contract and settlement on the behalf of the appellant were her next of kin and their spouses. They were certainly the peers in intelligence and experience of the broken old man with whom they dealt. There was no fraud or concealment, and they labored under no delusion, either as to the character of value or the property, or as to the legal or equitable rights of the parties thereto; and they were fully cognizant of all the history and circumstances of its acquisition and accumulation; and they furthermore had an interest, both direct and indirect, in seeing to it that their mother secured all to which she was entitled. In the absence of a showing to the contrary, the presumption is strong that they succeeded in attaining that object. We do not feel called upon to go into an elaborate discussion of items and values of property. Alimony is not to be awarded either as an emolument to the wife or as a punishment for the husband. The defendant is advanced in years, and left alone to struggle unassisted with a comparatively heavy burden of indebtedness, and regard must be had for his subsistence in his old age. The plaintiff obtained by the settlement at least as much as, or probably considerably more than, she would have acquired under the statute of descents and distributions if her husband had died intestate on the day before the contract was made. We think that under the circumstances she has nothing of which to complain and recommend that the judgment of the district court be affirmed.

LETTON and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be

AFFIRMED.