(No. 5952.   July 18, 1933.)

BERTHA ELLEN BEARD, Respondent, v. CHARLES EDWARD BEARD, Appellant.

[24 Pac. (2d) 47.]

A. L. Morgan, for Appellant.

Orland & Goff, for Respondent.

WERNETTE, J.—This is an appeal from a decree of the district court of Latah county, declaring as valid and subsisting a separation and property settlement agreement entered into by the parties. The essential facts are as follows: Appellant and respondent were married at Moscow, Idaho, October 2, 1917, and ever since have been husband and wife, and practically all of said time have been residents of the state of Idaho; that shortly after said marriage the respondent voluntarily accepted employment as a saleslady, and since said time has been continuously so employed; that respondent furnished practically all of the support of the parties since the marriage, and what little the appellant contributed in cash was insufficient to pay for his own individual support; that appellant and respondent have been living separate and apart since the month of April, 1931, the primary cause of the separation being differences that arose between them due to the laziness and idleness of appellant.

Respondent was industrious and saving; as a result the parties had accumulated cash, bonds and securities amounting to approximately $7,000, all due to the personal earnings of respondent. On the eighth day of October, 1931, the parties entered into a separation and property settlement agreement, which reads as follows:

"This agreement, made this 8th day of October, 1931 between Charles Edward Beard and Bertha Ellen Beard, husband and wife, Witnesseth:

"Whereas, differences have arisen between said husband and wife, on account of which they are separated and now live apart, and intend to live apart from each other during the remainder of their natural lives, and,

"Whereas, the said parties are mutually desirous of severing their marital relations;

"Now, therefore, in settlement, adjustment and compromise of all property questions and rights, the said husband, for and in consideration of the sum of $1000.00, to him paid by said wife, and the receipt of which is hereby by him acknowledged, does hereby assign, transfer and set over unto said wife any interest he may have in and to any and all personal property, money, shares of stock, notes, bonds, of whatsoever character standing in the name of said wife, except that said husband is to have and retain the household furniture in his room in the Egan's Apartments in the city of Moscow, Idaho, including the piano; and said wife, in further consideration of the premises, has this day executed a warranty deed to said husband, conveying to him that certain tract situated in Juliaetta, Latah county, Idaho, and described as follows, to-wit: Lots Nineteen (19) and Twenty (20) in Block No. Ten (10), in the original Town of Juliaetta.

"This agreement is a full and complete settlement of all property rights between the parties hereto as husband and wife, both now and after the death of either party to this agreement. From this time forward neither party shall have any interest of any kind or nature in or to any property, real, personal or mixed of the other party to this agreement, whether now owned by such party or hereafter acquired. In case either party applies for a divorce, this agreement shall be a full settlement of all property rights in such divorce action, and neither party in such action shall have the right to obtain any part of the property of the other or require the party to pay attorney's fees, alimony or suit money on account of such action for divorce. In the future, neither party shall be under any obligation to support the other.

"Each party to this agreement herewith solemnly and specifically avers that the foregoing agreement has been entered into without influence or fraud or coercion or misrepresentation.

"In witness whereof the above parties hereto have hereunto set their hands and seals the day and year first above written.

                          "CHARLES EDWARD BEARD.
                          "BERTHA ELLEN BEARD.
    "Signed in the presence of
                              "ADRIAN NELSON."

Upon the execution of the said contract respondent paid to appellant the $1,000 mentioned in said contract, being money on deposit in the bank, of the savings from respondent's earnings, and also conveyed by deed, delivered to appellant, the real property described therein.

Respondent instituted an action for divorce against appellant, based on nonsupport, in which she prayed for an absolute decree of divorce and that said property settlement be approved and confirmed. Appellant appeared by answer and cross-complaint, denying nonsupport and alleging that his signature was obtained to the contract by fraud; praying that the action for divorce by respondent be dismissed and that the said contract be set aside and held for naught. After the issues were framed the case was tried before the court. The court refused to grant to respondent the divorce, dismissed her action, held that the contract was valid, subsisting and binding upon the parties and approved and confirmed the same.

Appellant retained the $1,000 paid him from the personal earnings of respondent, but after the evidence was closed, without request to reopen the case, and upon notice to opposing counsel, prior to submitting briefs to the court for its determination, appellant deposited with the clerk of the court a deed reconveying to respondent the real property conveyed to him by respondent.

The two specifications of error assigned are to the effect that the court was in error in finding and decreeing that the contract is a valid and subsisting contract as between the parties, and by approving and confirming the same, for the reason that the alleged contract was, and is, void as shown upon its face.

Appellant takes the position that under our statutes marriage is a personal relation arising out of a civil contract and can only be dissolved by death or a decree of the district court, sections 31–201, 31–601 and 31–715, Idaho Code Annotated; that by reason of the marriage certain mutual obligations arise between the parties, in that the husband and wife contract with each other obligations of mutual respect, fidelity and support, sections 31–901 and 31–916, Idaho Code Annotated; also that the right of the wife to alimony and suit money is fixed by law and part of the marriage contract, sections 31–704, 31–706 and 31–707, Idaho Code Annotated.

The appellant with great zeal and persuasive argument contends that the contract amounts to a modification, by the parties themselves, of the marriage relation, in violation of the laws of the state and against public policy, and is therefore null and void. He is supported in such contention by respectable authority. One of the leading cases in support of the theory advanced by appellant (*Lyons v. Schanbacher*, 316 Ill. 569, 147 N. E. 440), in which case a similar contract was under consideration, the court among other things said:

"The purpose of this agreement was the renunciation of the marital obligation. One consideration for its execution was the release of appellant forever from any obligation to support or contribute to the support of his wife. The duty of the husband to support the wife is imposed upon him by law. It does not depend upon inadequacy of the wife's means, but upon the marriage relation. Husband and wife may contract with each other as to their mutual property rights, but the husband cannot by contract, either before or after marriage, relieve himself of the obligation imposed upon him by law to support his wife."

The supreme court of the state of New Hampshire, in *Hill v. Hill*, 74 N. H. 288, 67 Atl. 406, 124 Am. St. 966, 12 L. R. A., N. S., 848, and the supreme court of the state of Wisconsin, in *Ryan v. Dockery*, 134 Wis. 431, 114 N. W. 820, 126 Am. St. 1025, 15 L. R. A., N. S., 491, held just as

emphatically to the same effect as the Illinois court, that such contracts are null and void; that husband and wife cannot, by contract, vary the personal duties and obligations to each other, which result from the marriage contract itself.

In the case of *VanKoten v. VanKoten,* 323 Ill. 323, 154 N. E. 146, 50 A. L. R. 347, one of the cases cited by appellant, the supreme court of Illinois said:

"Marriage is a civil contract to which there are three parties—the husband, the wife, and the state—and it is regarded as a status based upon public necessity and controlled by law for the benefit of society at large. . . . . One of the contractual obligations of the marriage contract is the duty of the husband to support the wife, and this contractual obligation cannot be abrogated without the consent of the third party, the state."

While the supreme courts of the three states above mentioned uphold the contention presented by appellant, by far the great weight of authority is to the contrary. An exhaustive note to *VanKoten v. VanKoten,* reported in 50 A. L. R. 351, reviews many of the leading authorities, giving a clear analysis of the two lines of decisions. At page 352 we find the following:

"Notwithstanding the statutory duty of the husband to support his wife, the weight of authority appears to be that the objection of being contrary to public policy will not avail to render ineffective a wife's covenant releasing her right to support, in a voluntary agreement in connection with an existing or immediately contemplated separation, at least where the husband has carried out his part of the contract, and in the absence of any fraud, unfair advantage, or overreaching upon his part, or of any express statutory provision prohibiting such an agreement or covenant."

In an early decision in the state of Michigan (*Randall v. Randall,* 37 Mich. 563), the eminent jurist, Chief Justice Cooley, speaking for the court, very aptly expresses the law pertinent to such contracts:

"The chief difficulties with such contracts are encountered when they undertake to provide for a separation of the par-

ties and a breaking up of the marriage either with or without a divorce. It is not the policy of the law to encourage such separations, or to favor them by supporting such arrangements as are calculated to bring them about. It has accordingly been decided that articles calculated to favor a separation which has not yet taken place will not be supported. (Citing cases.) But when a separation has actually taken place, or when it has been fully decided upon, and the articles contemplate a suitable provision for the wife and children, or an equitable and suitable division of the property, the benefits of which both have enjoyed during the coverture, no principle of public policy is disturbed by them; on the contrary, if they are fair and equal, and are not the result of fraud or coercion, reasons abundant may be found for supporting them, in their tendency to put an end to controversies, to prevent litigation, and to give to the wife an independence in respect to her support which without some such arrangement she could not have under the circumstances. The cases are too numerous for citation where such arrangements have been supported, and we only refer to a few of the many which both in England and in this country have settled the law beyond further controversy. (Citing cases.) In some of these cases the articles have been enforced against the husband or his estate, and in others against the wife or her estate, and although a trustee for the wife has been usually provided for by the articles, in whose name suits on her behalf might be brought, it was long ago determined that this was wholly unnecessary, and that equity, whenever it became needful, would give effect to provisions on her behalf by adjudging the husband to be her trustee and requiring him to account accordingly. (Citing cases.) It would certainly be unnecessary in this state, where the wife has full authority to make contracts in respect to her individual property, which includes authority to make contracts to acquire property."

This decision was concurred in by two justices, Campbell and Graves, nearly, if not equally, as great as Chief Justice Cooley.

In the case of *Wells v. Stout,* 9 Cal. 479, the distinguished Justice Field, with his usual care and great learning, reviewed the authorities and concluded that it was the settled law of England, as well as the United States, that agreements such as the one before us are not invalid because against sound principles of public policy, and are upheld and enforced if followed by immediate separation or if separation has previously taken place. This decision was given with reference to the law in force in the state of California prior to the time of the present statutory law regarding the marriage contract, and the legal relations which arise therefrom, which present statutory law did not come into being until 1872, and which was in force and effect at the time when the opinion of *Sanguinetti v. Sanguinetti,* 51 Cal. App. 347, 196 Pac. 799, was rendered, wherein the supreme court of California approved *Wells v. Stout, supra.*

In the case of *Daniels v. Benedict,* 97 Fed. 367, Circuit Judge Sanborn, speaking for the court regarding a contract of similar content, said:

"The contract of separation, therefore, like agreements between strangers, was valid and binding, unless it was illegal, immoral, or violative of public policy. There is certainly nothing illegal in an agreement for a husband and wife to live separate and to divide their property. There is no moral turpitude in such a contract, nor can it be said at this day to be otherwise than in accord with the public policy of England and the United States. . . . . There is an unbroken series of decisions in England, from *Seeling v. Crawley,* which was decided by the master of the rolls in the year 1700 (2 Vern. 385), to *Wilson v. Wilson,* in which the opinion was rendered by the lord chancellor in the house of lords ·in 1848 (1 H. L. Cas. 538, 573), that agreements of this character are valid, and that they are not in contravention of sound principles of public policy. (Citing cases.) Repeated decisions of the courts of this country announced the same conclusions, and enforced the performance of these contracts, until in 1869, in *Walker v. Walker's Ex'r,* 9 Wall. 743, 750 [19 L. ed. 814] ; Mr. Justice Davis, in deliver-

ing the opinion of the supreme court, declined to discuss the question, and declared that: 'Contracts of this nature, for the separate maintenance of the wife through the intervention of a trustee, have received the sanction of the courts in England and in this country for so long a period of time that the law on the subject must be considered as settled.' ''

Citing many cases from various jurisdictions.

Later decisions are in entire accord with the law as announced in the earlier cases. See *Roden v. Roden*, 29 Ariz. 398, 242 Pac. 337; *Bailey v. Dillon*, 186 Mass. 244, 71 N. E. 538, 66 L. R. A. 427; *Melton v. Hubbard*, 135 Ga. 128, 68 S. E. 1101; *Melrose v. Besser*, 77 Ind. App. 3, 133 N. E. 27; *In re Berner*, 217 Mich. 612, 187 N. W. 377; *Hiett v. Hiett*, 74 Neb. 96, 103 N. W. 1051; *Commonwealth v. Richards*, 131 Pa. 209, 18 Atl. 1007; *Parsons v. Tracy*, 127 Wash. 218, 220 Pac. 813; *Hughes v. Leonard*, 60 Colo. 500, 181 Pac. 200, 5 A. L. R. 817.

Section 28–101, Idaho Code Annotated, provides as follows:

"All persons are capable of contracting except minors, persons of unsound mind, and persons deprived of civil rights."

In an exhaustive article by Mr. Francis Jacob, on the law of community property, 1 Idaho Law Journal, 140, he states:

"There is nothing in the law which can be regarded as a general prohibition of contracts or property transfers between husband and wife. Owing to the 'peculiar nature of the relationship,' and to the fact that a wife is a married woman, their situation will not be the same as that of strangers; but there is no doubt that they can contract with one another, or that one can transfer property to the other."

Citing numerous Idaho cases amply supporting the text.

It is the general rule that the husband must support the wife, and it matters not whether such duty or obligation is based upon statute or common law, the same obligation exists in either case. In this state the duty or obligation to support the wife by the husband is based upon statute (section 31–901, Idaho Code Annotated). Also, under certain

conditions, the wife may be required to support the husband (section 31–916, Idaho Code Annotated). The duty of the wife to support the husband is not any greater than that of the husband to support the wife; in fact not as great. Nor is the duty of the husband to support the wife any greater under the statute than it would have been under the common law. Appellant contends, however, that by reason of the marriage, one of the mutual obligations which arise between the parties is that of support, and in this state, according to statute, a marriage contract can be dissolved only by death or decree of a district court having original jurisdiction; therefore, if contracts of this nature are upheld, the obligation created by law could be nullified or destroyed by the parties themselves. To our knowledge the marriage contract cannot be dissolved in any other state except by death or decree of a court having competent jurisdiction. If there is any other method, none has been suggested. Yet the courts have almost uniformly held that parties to the marriage contract have the right, as between themselves to make such contracts, and they are valid and binding.

Appellant contends further that the state is an interested party in the marriage contract, and in the event that one or both of the parties are released from the obligation of support either may become a burden to the state. That question is not properly before us at this time. The state is not a formal party to the action and the fact that either of the parties to the contract may become a burden to the state may never arise. The same question arose in the case of *Randall v. Randall, supra,* in which Chief Justice Cooley fully answered the same. Speaking of the contract regarding the husband, he said:

"It may be that this would not release him from his obligation to the public, to see that under no circumstances, while he had ability to prevent it, should she become a public charge, but the agreement would protect him against any claim made on her behalf; and this was probably all that was contemplated."

The same statement would amply apply to the wife where it is her lawful duty to support the husband.

This court has recognized the validity of a contract of this character in the case of *Johnson v. Richards,* 50 Ida. 150, 294 Pac. 507, which was an alienation of affections case. In that case the defendant sought to introduce in evidence a property settlement agreement as affecting the damages in the case. The contract among other things contained the following provisions:

"It is mutually agreed between the parties hereto that this agreement and indenture is made with the intention of and for the purpose of settling forever all the rights between the said husband and wife in regard to their property or the property of either of them, whether community or separate, and it is agreed that neither of them will ever make any claim upon the other of any kind or nature whatsoever, dependent upon or growing out of the marriage relation which now exists between them. . . . .

"It is understood and agreed that the foregoing division of the property of the parties hereto is given and accepted by each party in full satisfaction of the other party's obligation to contribute to his or her support."

Regarding this agreement, the court made the following statement:

"The court erred in excluding this agreement from the record, and in instructing the jury that loss of support was an element of damage in this case. Respondent's right to support from her husband was merged in the obligation assumed under this contract, and she could no longer look to him for support or maintenance while the contract was in force. It did not affect her right to her husband's affection, comfort, society, and protection, nor release appellant from liability if she deprived her of them."    .

Appellant contends, however, that the question, as to the validity of the contract was not squarely presented; that the action was not as between the parties to the contract, and the contract being merely a collateral matter which came up in the course of the trial, that such fact in itself did not

involve the contract. While it is true that this was not an action between the parties to the contract, wherein the validity of the contract was directly in issue, yet it must be conceded that the court had to consider the validity of the contract, as to whether it affected the substantial rights of the parties. If, as the appellant contends, such a contract is null and void, certainly the court would not give life to such an instrument, which was void in its inception. If, instead of the property settlement agreement a contract had been offered, made by the husband and wife, whereby they attempted to dissolve the marriage entirely so as to have the force and effect equivalent to an absolute divorce, all would agree that it would have been null and void, but not any more so than appellant contends that the property settlement agreement is void. If such an agreement had been offered in evidence certainly the supreme court would not have held that it should have been admitted in evidence, for the reason that it was not binding, even though the contract was not directly in issue in the case.

In the case of *Keyes v. Keyes,* 51 Ida. 670, 9 Pac. (2d) 804, the parties, by their agreement, and the court by its decree based thereon, attempted to release respondent from further liability for the support and maintenance of the minor child, except when he was in the husband's custody, and the validity of that portion of the agreement and decree was presented for consideration. The court held:

"The general rule would seem to be that *as between the husband and wife, an agreement touching the custody and maintenance of the children will be respected and enforced,* yet such an agreement cannot, as against the children, divest either parent of the paramount duty imposed upon both by law to support and educate them." (Citing cases.) (Italics ours.)

Thereby recognizing the rule that as between husband and wife they can bind each other contrary to duties that are directly imposed upon each by law.

What has been said with regard to the law applicable to the rights of husband and wife to contract with regard to

support is equally applicable to the right of the wife regarding alimony and suit money. It is not contended by appellant, in this court, that there was any fraud, coercion or undue influence, or that appellant was in any manner overreached in the execution of the agreement in question. We find no law in the state of Idaho preventing a valid execution of such a contract as the one in question.

In view of the record and the great weight of authority upholding contracts of this nature, we conclude the lower court did not commit any error in approving and confirming the agreement in question, and holding that it is a valid and subsisting contract binding upon the parties in the action.

Judgment affirmed.

Budge, C. J., Givens and Holden, JJ., and Reed, District Judge, concur.