**COOPER v. COOPER.**

No. 137.

Municipal Court of Appeals for the
District of Columbia.

Feb. 4, 1944.

Raymond E. Gable, of Washington, D. C. (Needham C. Turnage and Oscar J. See, both of Washington, D. C., were on the brief), for appellant.

Louis Rothschild, of Washington, D. C., for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

RICHARDSON, Chief Judge.

Appellee, after obtaining a final decree for divorce and alimony, sued for installments under a prior separation agreement. She claimed (1) a balance of $20.61 arrears due on May 20, 1942, when the divorce action was commenced, and (2) the amount of the agreed monthly payments of $60 accrued thereafter to October 20, 1942, when temporary alimony was awarded in that action. Judgment was in her favor and the defendant has appealed.

The parties were married in 1917. On December 15, 1936, they executed the separation agreement involved here. Therein appellant contracted to pay appellee the sum of $60 per month. He also agreed to pay all outstanding bills and appellee's apartment rent to a certain date; he relinquished all claim to furniture, furnishings, and personal property except his wearing apparel.

In the agreement appellee covenanted that "in any action for divorce growing out of this marriage she will not make any claim for alimony or counsel fees."

Appellant complied with the agreement until February, 1942. In January, 1942, he notified appellee by letter that thereafter he would deduct a portion of her payment in order to pay his income tax. He made deductions totaling $20.61 from payments accrued during February to May, inclusive. The record does not show that appellee questioned his right to make these deductions or otherwise protested or objected thereto.

Appellee, in filing her suit for absolute divorce, claimed alimony. By amendment she claimed temporary alimony and counsel fees. October 20, 1942, she was granted $45 per month temporary alimony. April 20, 1943, she was granted a divorce upon the ground of five years' voluntary separation[1] and awarded permanent alimony of $60 per month. She was allowed a counsel fee of $100. Her complaint for divorce referred to the provision for her maintenance in the separation agreement, but did not charge default thereunder or make it the basis of her claim for relief.

Marriage originates in the voluntary contract of the parties; but, when consummated, public policy imposes definite legal obligations which the parties may not escape by their voluntary act or agreement. Here, as in a majority of the states, parties who have separated, or contemplate immediate separation, may agree upon terms mutually satisfactory to them. Such agreements, however, do not stand upon the same footing in all respects as other contracts, and their validity will not be recognized if there is evidence of fraud[2] or

---

[1] Code 1940, 16—403.

[2] A degree of fraud or duress less than that required to impeach an ordinary contract may suffice. Hiett v. Hiett, 74 Neb. 96, 103 N.W. 1051.

coercion, or if the terms are unfair or unreasonable. "The court will not suffer the wife to be over-reached by the husband, or sustain a contract, prejudicial to her, obtained by him while she is under his domination."[3]

But if the restrictions imposed by public policy have been observed, if the contract is valid, the legal rules defining their rights and remedies are neither lessened nor increased by their marital status.[4] "Agreements of separation not made in contemplation of a future possible separation will be recognized and enforced if the provision for the wife's support is reasonable and fair." Shaw v. Saxman, 46 App.D.C. 526, 531. This is so whether the question arises in a legal or an equitable action. Cronan v. Cronan, 46 App.D.C. 343. In Stuart v. Stuart, 77 U.S.App. D.C. 200, 133 F.2d 411; Hammond v. Hammond, 76 U.S.App.D.C. 357, 131 F. 2d 351; and Emrich v. McNeil, 75 U.S. App.D.C. 307, 126 F.2d 841, 146 A.L.R. 1146, the decisions were reached by application of legal principles common to all contractual actions.

In the divorce action, neither party relied upon the separation agreement or assumed its continued existence. On the contrary, appellee, in her complaint for divorce and alimony, despite her covenant, sought "a reasonable sum" as permanent alimony. Appellant answering denied liability for her support and maintenance in any amount. This was a rescission of the contract, and whether or not it was justified by appellant's conduct is immaterial. An abandonment by mutual consent resulted. "When a party, even without right, claims to rescind a contract, if the other party agrees to the rescission, or does not object thereto, and permits it to be rescinded, the rescission is by mutual consent. * * *

It is evident that, when a contract is rescinded by mutual consent or otherwise, no action can be maintained for a breach thereof." Ralya v. Atkins, 157 Ind. 331, 61 N.E. 726, 729. See also 13 C.J., Contracts, § 624, and 17 C.J.S., Contracts, § 389.

The court was fully advised of the terms of the agreement, of the extent of appellant's default when the suit was filed, and that payments under it were then discontinued. Yet it was not asked to enforce the contract. On the contrary, each of the parties claimed relief inconsistent with its continued existence.

In awarding alimony and counsel fees to appellee the court undoubtedly was influenced by the complete picture presented by the pleadings and evidence.[5] The contract, abandoned by mutual accord as a basis for relief, only served as evidence of what the parties had once agreed upon as a reasonable provision for the wife's support.

Appellee relies upon Halstead v. Halstead, 74 N.J.Eq. 596, 70 A. 928, where the court permitted a recovery under the maintenance agreement to the date payments began under a court order. That was a suit in equity wherein the court applied what it regarded as equitable principles, for which it cited no precedent. And in that case there was no covenant, as here, against the bringing of an action claiming alimony.

The trial court, holding the deductions from the February to June payments to have been a breach of the separation agreement, ruled that as appellant had committed the first breach, appellee was justified in disregarding the agreement and asking alimony and counsel fees in the divorce suit. Therefore, it held, appellee could enforce payment under the contract

---

[3] Parsons v. Parsons, 62 S.W. 719, 720, 23 Ky.Law Rep. 223; see also Walker v. Walker's Ex'r, 9 Wall. 743, 752, 19 L.Ed. 814; Cox v. Mailander, Tex.Civ.App., 178 S.W. 1012; Hensley v. Hensley, 179 Cal. 284, 183 P. 445.

[4] For example, where separation agreements were fair and reasonable, courts have enjoined the prosecution by the wife of a statutory maintenance action (Bailey v. Dillon, 186 Mass. 244, 71 N.E. 538, 66 L.R.A. 427); property settlements have been sustained (Hensley v. Hensley, supra), and trusts declared (Walker v. Walker's Ex'r, supra); waivers of the right to alimony and counsel fees in subsequent divorce actions have been enforced (Ascher v. Ascher, 213 App.Div. 183, 210 N.Y.S. 515; Worman v. Worman, 118 Fla. 471, 159 So. 677; Melson v. Melson, 151 Md. 196, 134 A. 136; McEvoy v. McEvoy, 214 Ala. 112, 106 So. 602; Zysman v. Zysman, 140 Misc. 617, 251 N.Y.S. 355) and it has been held that the wife may not accept one provision of the contract and repudiate another (Banner v. Banner, 184 Mo.App. 396, 171 S.W. 2; State v. Giroux, 19 Mont. 149, 47 P. 798).

[5] 17 Am.Jur. "Divorce and Separation," Secs. 596, 603; Roberts v. Roberts, 160 Md. 513, 154 A. 95.

notwithstanding her failure to abide by its terms.

We agree with the trial court that appellant was not entitled to deduct a portion of his income tax from the sums payable to appellee,[6] but it does not follow that appellee may treat this default as ending her own obligations while permitting her to enforce his future performance.

The general rule is that a party cannot affirm a contract in part and repudiate it in part. He cannot accept the benefits on the one hand while he shirks the disadvantages on the other.[7]

Moreover, the circumstances are such that in our opinion appellant's acts did not constitute such a breach, renunciation, or abandonment of the contract as would authorize appellee to rescind it.

"It is not every breach of a contract or failure exactly to perform—certainly not every partial failure to perform—that entitles the other party to rescind."[8]

"The act upon which the person bases his right to no longer be bound by the contract must involve an unqualified refusal by the other party to perform, and should, in its legal effect, amount to a determination not to be bound by, or perform, the contract in the future. A mere dispute as to the manner of the performance, a misunderstanding as to the manner in which it shall be performed, not persisted in, does not justify a rescission by the other party."[9]

In Mobley v. New York Life Ins. Co., 295 U.S. 632, 55 S.Ct. 876, 878, 79 L.Ed. 1621, 99 A.L.R. 1166, the action involved an insurance policy requiring monthly payments for total disability. The company, after payments had been made for an extended period, notified insured that he had not been continuously disabled within the meaning of the policy and that no further payments would be made. Payments were discontinued. Insured sued for damages upon the theory that this constituted a breach of the contract and a repudiation of the company's obligations which entitled him to recover past payments and prospective future loss. The court said: "Mere refusal, upon mistake or misunderstanding as to matters of fact or upon an erroneous construction of the disability clause, to pay a monthly benefit when due is sufficient to constitute a breach of that provision, but it does not amount to a renunciation or repudiation of the policy."[10]

There is nothing in the record before us to indicate that appellant capriciously or arbitrarily misconstrued or persisted in an erroneous construction of his contract, or refused to be dissuaded from his course.[11]

We hold that whether the act of appellee in filing suit for divorce and alimony be regarded as a breach of the contract which appellant's default did not justify, or as a rescission terminating the contract by mutual consent, appellee was not entitled to enforce the contract for monthly payments accrued after the filing of her suit.

But the liability for payments which had accrued and were unpaid when the divorce suit was filed was then a fixed liability unaffected by the subsequent acts of the parties. As to that amount only the judgment will be affirmed.

Affirmed as modified, without costs.

6 Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391; Gould v. Gould, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211.

7 13 C.J. Contracts, § 682; 17 C.J.S., Contracts, § 416. See also cases cited in footnote 4.

8 12 Am.Jur. "Contracts", Sec. 440.

9 Blake v. Osmundson, 178 Iowa 121, 159 N.W. 766, 773; see also White v. Massee, 202 Iowa 1304, 211 N.W. 839, 66 A.L.R. 1434.

10 See also New York Life Ins. Co. v. Viglas, 297 U.S. 672, 56 S.Ct. 615, 616, 80 L.Ed. 971, where the facts were similar. The court held: "There is nothing to show that the insurer was not acting in good faith in giving notice of its contention that the disability was over. (Cases cited). If it made a mistake, there was a breach of a provision of the policy with liability for any damages appropriate thereto. * * * Enough in this connection that at that stage of the transaction there had been no renunciation or abandonment of the contract as a whole. * * * For breach short of repudiation or an intentional abandonment equivalent thereto, the damages under such a policy as this do not exceed the benefits in default at the commencement of the suit."

11 Appellant's demand that his wife share a proportionate part of the burden of increased taxation was not plainly unreasonable. Shortly thereafter Congress amended the income tax law to permit husbands to deduct payments of alimony in computing net income for taxation, and required wives to pay income tax on amounts received as alimony. Int.Rev.Code, § 22(k), as amended by Revenue Act of 1942, 26 U.S.C.A. Int.Rev.Code, § 22(k).