67 P.3d 1274

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Patrick S. SUITER, Defendant–Appellant.**

**No. 26632.**

Court of Appeals of Idaho.

Jan. 31, 2003.

Greg S. Silvey, Boise, for appellant.

Hon. Alan G. Lance, Attorney General; Karen A. Hudelson, Deputy Attorney General, Boise, for respondent. Karen A. Hudelson argued.

**664**

PERRY, Judge.

Patrick S. Suiter appeals from his judgments of conviction for felony malicious injury to a canal and misdemeanor resisting and obstructing officers.[1] We vacate and remand.

## I.

## FACTS AND PROCEDURE

On October 30, 1999, law enforcement officers responded to a call from a watermaster in Canyon County who reported that Suiter was using a backhoe to dig in a canal located along the northern boundary line of property owned by Suiter's wife. Suiter and his wife had been involved in a dispute with the ditch company that owned, used, and maintained the canal for agricultural purposes. This dispute centered on the canal boundaries and a right of way over the property owned by Suiter's wife. As a result of civil litigation between the Suiters and the company, the company obtained a restraining order prohibiting the Suiters from causing damage to or interfering with the company's use, maintenance, and repair of the canal; the canal bank road; and its embankments.

Upon arrival at the canal, officers saw Suiter operating a backhoe in the canal, transferring dirt from the north bank to the south bank next to his wife's property. Upon the officers' requests, Suiter shut off the backhoe but refused to exit the backhoe to speak with the officers. The officers told Suiter that he was trespassing. Suiter became belligerent and was advised by the officers that he was under arrest. Suiter, however, resumed digging with the backhoe. After unsuccessful attempts to have Suiter voluntarily exit the backhoe and speak with them, the officers used force to remove and arrest him. Suiter was charged with felony malicious injury to a canal, I.C. § 18–7019, and misdemeanor resisting and obstructing officers, I.C. § 18–705. Suiter's cases were consolidated.

In an arraignment before the magistrate, Suiter submitted an application for a court-appointed attorney. The magistrate determined that Suiter was indigent and appointed counsel for Suiter's preliminary hearing in the magistrate division only. The magistrate's order stated that the district court, if it wanted to do so, could take up the issue of continuing court-appointed counsel at a later date. At the preliminary hearing, the magistrate reminded Suiter that the appointment of counsel expired on that day and that Suiter would need to request court-appointed counsel when he appeared before the district court.

At Suiter's arraignment before the district court, an indigency hearing was conducted. The district court denied Suiter's request for court-appointed counsel over Suiter's objection. The district court advised Suiter that he could request court-appointed counsel and present additional financial information at his continued arraignment and plea hearing before a different district judge. At the continued arraignment, Suiter again requested court-appointed counsel but was instructed to raise that matter before the assigned trial judge. Suiter filed a written motion for court-appointed counsel. Attached to the motion was a prenuptial agreement and a maintenance, healthcare and protection agreement between Suiter and his wife, relating to their ownership of property and assets. Suiter's motion was denied by the assigned trial judge.

At his pre-trial hearing and at trial, Suiter requested court-appointed counsel but was denied. Suiter represented himself throughout the trial. During the trial, the district court repeatedly admonished Suiter about his conduct before the court and expressed frustration with Suiter's behavior. Suiter asserts that during the trial, the judge directed an obscene gesture at him, after which Suiter moved to disqualify the judge. This motion was denied. After a two-day jury trial, Suiter was found guilty of both charges. The trial judge entered an order disqualifying himself from further proceedings, and the

---

1. Judge Weston was not the trial judge in this matter, but substituted as the sentencing judge upon Judge Goff's self-disqualification.

case was reassigned to another district judge.

For malicious injury to a canal, Suiter was sentenced to a two-year prison term, with nine months fixed. The sentence was suspended and the district court placed Suiter on probation for two years. For resisting and obstructing officers, Suiter was sentenced to 180 days in jail. In lieu of jail time, the district court imposed thirty days with the sheriff's work detail and ordered payment of restitution to the ditch company. Thereafter, the sentencing court found Suiter to be indigent and appointed counsel to represent Suiter on his appeal.

On appeal, Suiter argues that the district court erred when it denied his request for court-appointed trial counsel, that he was deprived of his right to an impartial and unbiased judge, and that the jury was improperly instructed on the crime of malicious injury to a canal.

## II.

## ANALYSIS

### A. Court-appointed Counsel

■ The Sixth Amendment of the United States Constitution and Article I, Section 13, of the Idaho Constitution guarantee the right to counsel. For indigent defendants, this includes the right to court-appointed counsel. *Gideon v. Wainwright,* 372 U.S. 335, 342–45, 83 S.Ct. 792, 795–97, 9 L.Ed.2d 799, 803–05 (1963); *Pharris v. State,* 91 Idaho 456, 458, 424 P.2d 390, 392 (1967). Idaho Code Sections 19–852(a)(1) and (2) provide that a needy person formally charged with having committed a serious crime is entitled to be represented by an attorney and to be provided the necessary services and facilities of representation at public expense, to the extent the person is unable to provide for their payment. As part of that representation, the needy person is entitled to the services of an attorney at all stages of the matter beginning with the earliest time when a person who is not needy would be entitled to receive assistance from an attorney. I.C. § 19–852(b)(1). Neither party disputes that Suiter was formally charged with a serious crime. Rather, the dispute in this case cen-

ters around whether Suiter was a needy person, entitled to court-appointed counsel. When a violation of a constitutional right is asserted, the appellate court should give deference to the trial court's factual findings unless those findings are clearly erroneous. *State v. Doe,* 136 Idaho 427, 430, 34 P.2d 1110, 1113 (Ct.App.2001).

Idaho Code Section 19–851(c) defines a needy person as one who "at the time his need is determined, is unable to provide for the full payment of an attorney and all other necessary expenses of representation." When determining whether a person is a needy person entitled to court-appointed counsel "the court concerned may consider such factors as income, property owned, outstanding obligations, and the number and ages of his dependents." I.C. § 19–854(b).

In this case, Suiter submitted an application to the magistrate for a court-appointed attorney. The financial statement in the application showed that Suiter was unemployed, but that he received a monthly social security payment of $621; that Suiter had $11 in cash, a truck worth $300, a shotgun worth $90, and no checking or savings account; and that Suiter owed his wife $600 per month for his own maintenance. The statement also indicated that Suiter's spouse made approximately $2,000 per month, had $20 cash on hand, and that she owned real property in her name that she had purchased with money received before her marriage to Suiter. At the hearing on Suiter's application for court-appointed counsel, the magistrate suggested that Suiter would have a community interest in his spouse's income. Suiter responded that his spouse did not seem to think so. The magistrate determined Suiter's indigency and appointed counsel for Suiter's preliminary hearing in the magistrate division only and stated that the district court, if it wanted to do so, could take up the issue of continuing court-appointed counsel. The magistrate noted in its order appointing counsel that the appointment could be revisited to determine whether an agreement between Suiter and his spouse (regarding their income, assets, and services) satisfied the requirements of I.C. §§ 32–916 through 32–919. At the preliminary hearing,

the magistrate reminded Suiter that the appointment of counsel expired on that day and that he would need to again request court-appointed counsel when he appeared before the district court.

At the arraignment before the district court, the court conducted an indigency hearing and referred to both Suiter's financial statement and the magistrate's order appointing counsel, specifically mentioning the magistrate's notation regarding an agreement between Suiter and his spouse. Based on the information provided during the indigency hearing, the district court determined that Suiter had $16,000 equity in real property that Suiter was in the process of refinancing; that Suiter received a monthly disability payment of $620; that he did not establish the amount of his medical expenses; that Suiter's wife earned take home pay in the amount of $1,500 monthly; that Suiter had firearms worth $650 and a vehicle worth $2,000; that his expenses included $560 for the property payment and $100 each for telephone and electricity; and that he owed $1,100 for groceries. The district court concluded that Suiter was not indigent and denied his request for court-appointed counsel. Suiter objected. The district court stated that Suiter could request court-appointed counsel and present additional financial information at his continued arraignment and plea hearing before a different district judge. At the continued arraignment, Suiter again requested court-appointed counsel but was simply instructed at that time to raise that matter before the assigned trial judge, and a not-guilty plea was entered.

Suiter then filed a written motion for court-appointed counsel. Attached to the motion was a September 1, 1992, prenuptial agreement between Suiter and his wife. The prenuptial agreement provided that each party would be the sole owner of all wages, salaries, bonuses, dividends, and all other monies earned by that individual including all earnings from the investments of that individual's monies; that each party would be the sole owner of any real or personal property purchased with the monies of that individual, and a claim could not be made as to any part of said real property or otherwise

by the other party for any reason; and that each party relinquished all rights to any items that could be considered community property that would be earned, owned, or purchased by the other party.

Also attached to the motion was a June 1, 1996, maintenance, healthcare, and protection agreement entered into by Suiter and his wife during their marriage. The maintenance agreement provided that, because of Suiter's mental and physical disabilities, Suiter's wife would provide services to ensure that Suiter's needs would be met, including banking, financial, shopping, transportation, food preparation, laundry, cleaning, personal hygiene, and medical care. In exchange for these services, Suiter was to pay his wife $600 per month. The maintenance agreement again stated that all real property was purchased and owned by Suiter's wife using her earnings prior to their marriage and that Suiter would not have any claim to any property, real or otherwise, including her wages or salary. The maintenance agreement referenced two recorded real estate deeds that, according to the maintenance agreement, provided evidence supporting the property ownership assertions outlined in the maintenance agreement.

Suiter's motion was denied by the district court. Handwritten on the proposed order was the district court's finding that Suiter was not indigent based upon oral and written testimony and case law. At trial, Suiter once again requested court-appointed counsel but was denied.

■ As stated previously, I.C. § 19–854(b) authorizes appointment of counsel for needy persons and provides, in pertinent part:

> In determining whether a person is a needy person and in determining the extent of his inability to pay, the court concerned may consider such factors as income, property owned, outstanding obligations, and the number and ages of his dependents.

Suiter argues that the "income" and "property" referenced in this section include only Suiter's income and property and do not include his wife's earnings or real property which, by terms of a premarital agreement

and a maintenance agreement, are her separate property. This position overlooks the mutual obligation of support owed by one spouse to another. Even if Suiter's wife's income and assets were her separate property, that did not relieve her of her duty to support Suiter. Although the premarital and maintenance agreements purport to relinquish Suiter's rights in his wife's property and earnings, neither agreement contracts away their mutual duties of support. The maintenance agreement specifically provides for Suiter's wife to support him and to provide for his food, medical care, and protection. Thus, the documents demonstrate that Suiter and his wife intended to provide for his support and placed upon her such an obligation.

Idaho courts have long recognized the obligation of one spouse to provide necessaries for the other. In *Edminston v. Smith*, 13 Idaho 645, 92 P. 842 (1907), an action was commenced to recover from the husband a balance due for board and lodging provided to the wife. The Idaho Supreme Court held that the husband had an obligation, which was incident to his marital duties and arose by operation of law, to pay for necessaries furnished to his wife. Therefore, the Court concluded that the husband was "unquestionably liable for the debt." *Id.* at 651, 92 P. at 844. In *Hall v. Johns*, 17 Idaho 224, 105 P. 71 (1909), *overruled on other grounds by Williams v. Paxton*, 98 Idaho 155, 559 P.2d 1123 (1976), the Supreme Court indicated, in dicta, that a wife is obligated to support her husband where there is no community property and the husband is incapable of self-support. The Court stated that the "wife is under no obligation whatever to support the husband, *except when he has no separate property and there is no community property and he from infirmity is not able or competent to support himself.*" *Id.*, at 231, 105 P. at 72 (emphasis added). Again in *Beard v. Beard*, 53 Idaho 440, 24 P.2d 47 (1933), the Idaho Supreme Court alluded to the obligations of husbands and wives to support one another. This duty of mutual support is codified in I.C. § 32–901, which provides that "husband and wife contract toward each other obligations of mutual respect, fidelity, and support." In *Matter of*

*Estate of Bowman*, 101 Idaho 131, 136, 609 P.2d 663, 668 (1980), our Supreme Court noted that, under this statute, "one spouse is obligated to support the other."

The question at hand is whether this duty of support includes a duty to finance the legal defense of a spouse who faces criminal charges. Other courts addressing this question have held that a spouse does have such a duty. In *State v. Clark*, 88 Wash.2d 533, 563 P.2d 1253 (1977), a married woman sought appellate review, at public expense, of her conviction for drug offenses. The Washington Supreme Court considered whether the separate property of a criminal defendant's spouse could be considered in assessing the defendant's claim of indigency. The court considered a family-expense statute, which was deemed to be at least as broad as the common law duty to provide necessaries for one's family. *Id.* at 1255. The court concluded that necessaries included legal expenses to defend against a criminal charge when a spouse's liberty is at stake. *Id.* at 1256. Therefore, the court held the husband's assets were to be considered in determining whether the wife was indigent.

In *Read v. Read*, 119 Colo. 278, 202 P.2d 953 (1949), the wife sought an order requiring the husband to finance her appeal from a conviction for second degree murder. The issue presented to the Colorado Supreme Court was whether the wife's attorney fees and costs incurred to defend against the criminal charge were necessaries for which the husband was liable. Noting that the suffering and anguish resulting from her conviction could be as serious and disastrous as bodily ailments, the court held that the expenses were necessaries for which the husband was responsible. *Id.* at 957.

In *United States v. O'Neill*, 478 F.Supp. 852 (E.D.Pa.1979), the husband had been indicted for mail fraud and making false statements to a federally insured bank, and the wife was unwilling to pay for her husband's attorney fees. A federal defender was appointed to represent him, and the government later sought reimbursement from the wife for the cost of the federal defender. The court turned to the common law of Pennsylvania, which provided that a wife

could be held liable for the costs of necessaries afforded to her husband if she was capable of bearing the financial burden. *Id.* at 854. The court deemed it "apparent that the costs of legal representation are just as important and necessary as the costs of medical expenses for which a spouse would be liable." *Id.* at 855. Therefore, the court held that the wife was obligated, to the extent of her financial ability, to reimburse the government for its costs in providing the representation.

In *United States v. Conn*, 645 F.Supp. 44 (E.D.Wis.1986), the husband was initially provided appointed counsel, but subsequently retained a private attorney. After the husband had been convicted, the court considered whether he and his wife should be required to reimburse the government for the cost of the appointed counsel. From the court's opinion, it appears that all, or virtually all, of the parties' assets, including the home and vehicles, were titled in the name of the wife. The court held that the law of Wisconsin, which required a spouse to provide for the other spouse's protection under the law of necessaries, required a spouse to provide legal representation for defense of a criminal charge. Therefore, the wife was ordered to pay for the costs of representation by the appointed counsel. *Id.* at 45–46.

In *DuBois, Sheehan, Hamilton and DuBois v. DeLarm*, 243 N.J.Super. 175, 578 A.2d 1250 (App.Div.1990), the plaintiff law firm had defended the husband, subsequent to the marriage, in two criminal charges of death by auto for an accident that had occurred before the marriage, as well as for other motor vehicle violations. Throughout the law firm's representation of the husband, the husband was dependent upon the wife for support. After receiving the law firm's bill, the husband had his debts discharged in bankruptcy, having paid only a fraction of the law firm's charges. The law firm then sued the wife, seeking to recover fees from her. The reviewing court concluded that, under the "doctrine of necessaries," a spouse was liable for the cost of the other spouse's legal representation in defense of a criminal charge where the family support, income and well-being could be affected by the defendant's incarceration, loss of a driver's license, or any other sentence of consequence. *Id.* at 1256.

■ The duty of mutual spousal support codified in I.C. § 32–901 and recognized in Idaho common law compels a result like those reached in the foregoing cases from other jurisdictions. In this case, Suiter was charged with a felony, and was therefore under threat of imprisonment, for altering a canal for the purpose of benefiting his wife's real property. His legal defense was necessary to prevent or minimize his incarceration for this alleged offense and to thereby allow him to contribute to the well-being of his family. With Suiter unable to pay for an attorney from his separate or community assets, his wife's duty of support required that she pay, to the extent that she was financially able, for Suiter's legal defense in this criminal case. Therefore, this Court holds that the district court acted correctly in considering the property and income of Suiter's wife for purposes of assessing whether he was a needy person entitled to appointed counsel.

However, we further conclude that, even when Suiter's wife's income and assets are included, Suiter's resources, as represented to the district court, were insufficient to provide *full payment for an attorney and all other necessary expenses of representation* to defend against his felony and misdemeanor charges as required by I.C. § 19–851. Based on the information provided during the indigency hearing, the district court determined that the Suiters had $16,000 equity in real property that they were in the process of refinancing; that Suiter received a monthly disability payment of $620; that he had not established the amount of his medical expenses; that Suiter's wife earned take home pay in the amount of $1,500 monthly; that Suiter had firearms worth $650 and a vehicle worth $2,000; that his expenses included $560 for the property payment and $100 each for telephone and electricity; and that he owed $1,100 for past grocery expenses. This information does not, however, account for other obligations and expenses that would unquestionably be incurred such as food, insurance or medical care, transportation, taxes, and credit card debt.

■ Based on these facts, we hold that, even including the income and assets of Suiter's wife, Suiter was a needy person as defined by I.C. § 19–851(c) and should have been granted a court-appointed attorney. Two other courts, during the course of Suiter's case, found Suiter in need of court-appointed counsel—the magistrate ordered that Suiter be represented by court-appointed counsel for the preliminary hearing and the sentencing judge found Suiter to be indigent and appointed counsel to represent Suiter on this appeal. Therefore, Suiter should have also been provided counsel for his jury trial. Thus, we vacate Suiter's judgments of conviction and sentences. Whether Suiter and his wife should later be ordered to reimburse some or all of the public defender expense through installment payments is a matter that may be addressed by the trial court at the appropriate time.

## B. Jury Instruction

■ Because of our conclusion on the previous issue, we decline to address Suiter's claim that he was denied an impartial and unbiased judge at trial. However, for guidance on remand, we address Suiter's argument that the jury was improperly instructed as to the elements of the crime of malicious injury to a canal. The question whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Gleason,* 123 Idaho 62, 65, 844 P.2d 691, 694 (1992). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman,* 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct.App.1993). Furthermore, the failure to object to an instruction at trial in a criminal case does not constitute a waiver of any objection to the instruction on appeal. *State v. Smith,* 117 Idaho 225, 229, 786 P.2d 1127, 1131 (1990); *State v. Rivas,* 129 Idaho 20, 23, 921 P.2d 197, 200 (Ct.App.1996).

Idaho Code Section 18–7019 provides:

Every person who willfully and maliciously cuts, breaks, injures or destroys any bridge, dam, canal, flume, aqueduct, levee, embankment, reservoir or other structure erected to create hydraulic power, or to drain or reclaim any swamp and overflowed or marsh land, or to conduct water for mining, manufacturing, reclamation or agricultural purposes, or any embankment necessary to the same, or either of them; or willfully or maliciously makes, or causes to be made, any aperture in such dam, canal, flume, aqueduct, reservoir, embankment, levee or structure, with the intent to injure or destroy the same, is punishable by a fine not exceeding $1,000, or by imprisonment in the state prison not exceeding two years, or by both.

Idaho does not have a pattern jury instruction for this offense. The jury was instructed as follows:

In order for you to find the Defendant guilty of the crime of Malicious Injury to Canal, as charged in the Information, the State of Idaho must prove to each of you each of the following essential elements beyond a reasonable doubt:

1. That on or about October 30, 1999,
2. in the State of Idaho,
3. the Defendant Patrick S. Suiter,
4. did willfully and maliciously cut, break, injure or destroy a canal or embankment necessary to the canal.

Suiter argues that the instruction omitted several elements of the crime. Specifically, Suiter asserts that the instruction failed to include the type of canal to which the statute applies, namely a canal erected to create hydraulic power, or to drain or reclaim any swamp and overflowed or marsh land, or to conduct water for agricultural purposes. Suiter asserts that the legislature can and does distinguish between types of canals in the criminal statutes and was being specific when it indicated which canals are included under the felony crime of malicious injury to a canal. In support of this argument, Suiter notes that another Idaho statute provides that a person commits a misdemeanor when the person causes injury to a canal that conducts water to any place for beneficial use or purposes. *See* I.C. § 18–4306. Suiter contends that if the legislature wanted any canal to be included in the felony statute, it would have used the term "canal" followed by the broad "beneficial use" language of the

misdemeanor statute. In response to this argument, the state contends that the modifying language listing the various purposes of canals does not modify the term "canal," but only the phrase "other structure." The state argues that under statutory rules of construction, a referential or qualifying phrase generally refers solely to the last antecedent and not to other words, phrases, or clauses more remote. *See State v. Troughton*, 126 Idaho 406, 411, 884 P.2d 419, 424 (Ct.App. 1994).

■ For the reasons argued by Suiter, we conclude that the language listing the various purposes for conducting water does modify the term "canal." Thus, we hold that the jury instruction should have listed the purpose for which the canal in question was being used.

Suiter also argues that the instruction omitted a necessary intent element found in the statute. The statute can be violated in two ways; first, by willfully cutting, breaking, injuring, or destroying a canal; and second, by willfully and maliciously making or causing to be made any aperture in such canal with the intent to injure or destroy the same. The district court found that the second way concerning the aperture required the intent to injure or destroy but that the first way, for which Suiter was charged, did not. Suiter argues that the intent to injure or destroy language modifies both the first and second ways of committing the crime, and that the rule of lenity requires such a construction in favor of Suiter. Suiter therefore contends that the omission of this element rendered the instruction fatally defective.

In response, the state argues that the district court's instruction defining "willfully" and "maliciously" adequately encompassed the intent to injure or destroy element. In the instructions to the jury, "willfully" was defined as implying "simply a purpose or willingness to commit the act or make the omission referred to," and "maliciously" was defined as importing "a wish to vex, annoy, or injure another person, or an intent to do a wrongful act."

■ We agree that the legislature contemplated two ways one could violate the statute. These two ways are separated by a semicolon. The semicolon also separates the intent element contained in the second way from the elements of the first way of violating the statute. Reading the statute in this manner illustrates the types of behaviors the statute seeks to punish. The first way seeks to punish an individual that inflicts a higher level of damage to one of the enumerated structures. This way involves cutting, breaking, injuring or destroying one of the protected structures. The second way seeks to punish an individual who had the *intent to injure or destroy*, but instead inflicts damage less serious than a cut, a break, an injury or destruction—a mere aperture. Thus, it appears that the statute was created to punish both those who *succeed* in willfully and maliciously inflicting serious damage to a structure and those who *intend* to inflict serious damage but willfully and maliciously create damage less immediate in nature. We conclude that the intent to injure or destroy element applies only to the second way of violating the statute and that the omission of that element in the jury instruction was not error.

## III.

### CONCLUSION

Because of the mutual obligation of support owed by one spouse to another, and notwithstanding the agreements between Suiter and his wife, the district court properly included the separate property of Suiter's wife when it determined that Suiter was not indigent and not entitled to court-appointed counsel. However, even including the income and assets of Suiter's wife, Suiter's resources were insufficient to provide full payment for an attorney and all other necessary expenses of representation to defend against his felony and misdemeanor charges. Thus, Suiter was entitled to court-appointed counsel for his jury trial. For guidance on remand, we conclude that the district court erred when it failed to include the type of canal, in the jury instruction, as an element of the malicious injury to a canal offense. The absence of the "intent to injure or de-

stroy" element in the jury instruction was not error. For the foregoing reasons, we vacate Suiter's judgments of conviction and sentences and remand.

Chief Judge LANSING and Judge Pro Tem JUDD concur.