Harry T. Nusbaum, J.
This proceeding was submitted by the parties under the provisions of CPLR 3031 et seq., providing for the simplified procedure for court determination of disputes.
The claims asserted by the plaintiff wife are for $108,092.92 additional money allegedly due under paragraph 4(b) of the sepáration agreement entered into between the parties dated June 1, 1956.
The basis for the amounts claimed is the provision that the alimony payments due under paragraph 4(a) of the agreement ($4,500 per annum) were to be augmented by an amount equal to one third of any amount by which the husband’s income exceeded $18,000 per year. In addition to the foregoing payments, the agreement contained provisions for the payment of $1,500 annually for the support of each of their children plus one sixth of any net increase in the husband’s income over $18,000. Additional payments were to be made for education, summer camp, medical and dental bills and the maintenance of insurance for the benefit of the wife and children.
Thereafter on September 11, 1956, the plaintiff obtained a decree of divorce in the Circuit Court of Cook County, Illinois which contains the following significant language. ”2. That the Agreement between the plaintiff, Marilyn Miller Clurman and the defendant, Richard Michael Clurman, dated the 1st day of June, 1956, be and the same is hereby made a part of this *150 Decree for Divorce; and that all of the provisions of said Agreement shall be and they are expressly ratified, confirmed, approved, and adopted as the order of this Court to the same extent and with the same force and effect as if said provision were in this paragraph set forth verbatim as the decree of this Court.”
It would appear that over the years the defendant prospered, his salary increased and by 1964, he was earning $40,000 a year and paying his ex-wife the plaintiff herein $11,040 per annum as alimony in equal monthly installments. In addition, he paid the increased child support as required by the agreement and met all the obligations for their education, summer camp, etc.
The amount payable each year up to December, 1964 was apparently arrived at through meetings between representatives of the plaintiff and the defendant who examined the pertinent financial data and reached an agreement as to the amount due. Nevertheless, a claim is now also asserted for additional alimony in the sum of $4,500 for the years 1958 through 1961 and approximately $9,500 for the years 1962 and 1963 as part of the total sum herein demanded.
On December 26, 1964 the defendant, who had during that year suffered a long illness and convalescence, wrote a letter to his ex-wife which is the nub of this controversy. In that letter the defendant pointed out that his payments for alimony and child support exceeded $23,000 a year and after taxes left him with approximately $5,400 per year on an income in excess of $40,000 a year and were it not for the fact that his second wife was gainfully employed it would be impossible for him to make ends meet. He pleaded his inability to continue the escalatory payments without going further into bank debt and the resulting increased burdens both physical and emotional which the financial stresses were placing on him.
Because of this condition he made the following suggestion in paragraph seven of the letter: "What I suggest is that it would be most wise now for us to agree informally to continue the present level of payments but not increasing them or decreasing them by any formula. I say 'informally’ because I know that we cannot rewrite the agreement satisfactorily for you or me and that we will be involved in a complicated legal negotiation which will be costly in energy and money which I do not have, and which I cannot give to it.”
*151 In the eleventh paragraph of the letter he asked his wife "to accept my informal stabilization with you of our present arrangement without formally committing yourself to anything. If at some future time you find that unfair or out of line then we can reconsider.”
No reply was received to the defendant’s letter, but no further attempts were made by the plaintiff’s representatives to ascertain whether additional alimony was due. The defendant thereupon continued from 1964 through 1972 to pay $11,040 to his wife annually as and for the alimony due under the agreement in addition to the support payments due for their children. The said sum was accepted monthly by the plaintiff and she made no further demand for compliance with the terms of the original separation agreement until the commencement of this proceeding.
At this point it would be helpful to note that the separation agreement also contained the following pertinent provisions which must be considered in determining this dispute. "8. In the event that any final judgment by a court of competent jurisdiction shall be rendered separating or divorcing the parties hereto, upon the demand of any party hereto, this agreement shall, if consistent with the rules and approval of such court, be either referred to or incorporated in and become a part of any such judgment, order or decree of such court; but, to the extent that it is lawfully possible, this agreement and all its covenants shall not be affected or impaired by any such separation or divorce and nothing in such judgment, order or decree shall alter or amend or vary any of the terms of this agreement, it being expressly agreed that in any such event, this agreement and all the terms and conditions hereof shall continue in full force and effect, and shall be binding and obligatory on the parties hereto.”
"11. No modification or waiver of any of the terms of this agreement shall be valid unless in writing and executed with the same formality. No waiver of any such breach or default hereunder shall be deemed a waiver of any subsequent breach or default of the same and similar nature.”
"13. This agreement shall be construed in accordance with the laws of the State of New York.”
The agreement also contains provisions for arbitration of disputes thereunder, but I am informed that all attempts to resolve this matter through arbitration proved fruitless and the parties thereupon consented to submission of this dispute *152 under CPLR 3031 et seq. Settlement of this dispute was seemingly reached before me after a long and exhausting conference with the parties and their attorneys but this was also aborted by disagreements which followed over language and payment of attorneys’ fees. Some months later another conference was held before me in a further attempt to close the gaps which barred the settlement but this also failed. It is indeed unfortunate that the parties can reach no common meeting ground in this case which cries out for settlement. Any judicial determination will undoubtedly result in further rounds of litigation which can serve only to further deplete the resources of both parties.
Nevertheless, based upon the testimony adduced at the trial, the exhibits and memoranda of law submitted by both parties, I have reached the following conclusion. The main thrust of the plaintiffs contention is towards a determination that would result in an interpretation of the separation agreement and the rights of the plaintiff wife thereunder pursuant to the laws of Illinois. In fact, if the Illinois law is applicable, this court might be required under the provisions of CPLR 4511 (subd [a]) to make the findings so cogently urged upon it by the plaintiffs attorneys.
The plaintiff alleges the following under the laws of Illinois: (1) that arrearages arising from additional alimony under the separation agreement merged in the decree for divorce and became a vested debt of record; (2) the plaintiff did not enter into any modification agreement and was in fact powerless to modify the decree; (3) the plaintiffs acceptance of alimony and support payments from the defendant in amounts less than were due to her under that agreement do not constitute a waiver of her rights to arrears arising under the Illinois decree; (4) the alimony decree is a money judgment and the Statute of Limitations on money judgments is 20 years in both Illinois and New York.
However, this court is not of the opinion that the laws of the State of Illinois are applicable to the case at bar. The parties at the time the separation agreement was executed were both residents of New York and from the terms of the agreement, it would appear that they expected to continue to remain residents of New York. The agreement specifically states that it "shall be construed in accordance with the Laws of the State of New York” and in the provision with respect to arbitration contains the following significant language: "12. *153 The decision, award, order and judgment rendered by the arbitrator shall be rendered in such form as to be binding on the parties in accordance with the Laws of the State of New York, and where necessary and proper a judgment shall be rendered in any County of the Supreme Court of the State of New York.”
I will accept for the purposes of discussion the plaintiffs allegation that under Illinois law the separation agreement merged into and became part of the decree of divorce. However, does he- further urge that it was selectively merged therein; to wit, that those clauses which favored the plaintiff were to be interpreted under Illinois law while those clauses which disclose the true intent of the parties or favored the defendant were to be ignored? I think not.
Ratification, confirmation and adoption of the agreement as though set forth at length in the decree meant the entire agreement and not just parts of it. Were this matter before the Illinois court I am firmly of the opinion that it would be interpreted and decided pursuant to the laws of the State of New York for that was the plain intent of the parties. The plaintiff has cited no Illinois law to the contrary and my research has failed to reveal any (Read v Lehigh Val. R. R. Co., 284 NY 435). It is well established under New York law that where it can be ascertained, the intent of the parties shall govern as to which State’s law shall apply (A. S. Rampell, Inc. v Hyster Co., 3 NY2d 369; Employers’ Liab. Assur. Corp. v Aresty, 11 AD2d 331, affd 11 NY2d 696).
The case of Hatoff v Hatoff (41 Misc 2d 1007) cited by the plaintiff is not in point. In that case it does not appear that any agreement or other document was incorporated in the decree from which the intent of the parties could be ascertained. The case merely stands for the proposition that absent any intention or direction to the contrary full faith and credit must be given to the Illinois decree.
I find accordingly that the laws of the State of Illinois are not applicable to the issue presented in this matter. I also find that the terms of the separation agreement although ratified, confirmed and adopted by the Illinois decree of divorce survived in accordance with the terms of the agreement, as was the intention of the parties, and must be interpreted according to the laws of the State of New York.
This agreement and the subsequent facts relating thereto clearly indicate to this court that the wife, by her continued *154 acceptance of the $11,040 in alimony during the years 1964 to 1972 intended to and did in fact waive any further or additional payment which might be due to her under the separation agreement during that time. A separation agreement is subject to the same rules of law with respect to modification as any other agreement of the parties (Martin v Martin, 5 AD2d 307; Vendemortel v Vandemortel, 204 Misc 536; Gary v Gary, 6 Misc 2d 669, affd 4 AD2d 948).
Parties to a separation agreement have the right to modify by altering or adding provisions thereto regardless of the imposed limitations contained in the agreement, since the power to modify or alter cannot be restricted by any stipulation to the contrary in the original agreement (Salinas v Salinas, 187 Misc 509, affd 271 App Div 917). A separation agreement may be modified by an oral agreement which must be fully executed or so acted upon that the enforcement of the original agreement would be inequitable (McKenzie v Harrison, 120 NY 260; Leidy v Procter, 226 App Div 322; Enthoven v Enthoven, 225 App Div 309).
The failure of the wife to take any steps for almost eight years after the receipt of the letter from her husband in which he requested modification of the agreement, her continued acceptance of payments in accordance with the requested modification, and his reliance upon her apparent acceptance of the modification which caused him to change his own life style surely bar her at this late date from asserting any claim for past due alimony (Swanton v Curley, 273 NY 325; Maule v Kaufman, 33 NY2d 58).
According to the terms of the modification proposed by the husband in his letter of December 26, 1974 and accepted by the wife, the agreement to stabilize the payments due at $11,040 per annum was subject to reconsideration if at any time the wife on her part considered the arrangement unfair. To give effect to this stipulation which perhaps partially induced the modification agreed to by the wife, I must perforce hold that since 1972, and unless a new agreement is reached by court action, arbitration or otherwise, the alimony payments should be paid pursuant to the terms of the original separation agreement.
Judgment is accordingly granted to the defendant dismissing the plaintiff’s claim for past due alimony up to and including the year 1972.