**Danielle J. CLARK,**
**Appellant/Cross–Appellee,**

v.

**J. Raymond CLARK,**
**Appellee/Cross–Appellant.**

**Nos. 86–1065, 86–1109.**

District of Columbia Court of Appeals.

Argued Sept. 23, 1987.
Decided Dec. 31, 1987.

Brian D. West, with whom Mark B. Sandground and Mark A. Barondess, Vienna, Va., were on the brief, for appellant/cross-appellee.

Peter R. Sherman, with whom Claudia A. Cossman, Washington, D.C., was on the brief, for appellee/cross-appellant.

Before PRYOR, Chief Judge, and MACK and ROGERS, Associate Judges.

ROGERS, Associate Judge:

These appeals involve a separation agreement executed by the parties in 1976, three years before their divorce. Appellant/cross-appellee Mrs. Clark filed a complaint in 1985 seeking specific performance of the agreement and damages on the grounds that appellee/cross-appellant Mr. Clark had failed to pay alimony in accordance with paragraph 8 from 1978 to 1985. Mr. Clark denied liability, claiming that the parties had mutually rescinded and abandoned the agreement or, alternatively, had modified it, that its terms were unconscionable, and that the complaint was barred by laches; he also counterclaimed for one-half of the proceeds from the sale of stock to which he was entitled under the agreement

and for $28,186 plus interest on a loan he had made for the purchase of Mrs. Clark's home which he was not required to do under the agreement. The trial judge found that through June, 1985, Mr. Clark had fully performed his alimony obligations under the agreement in accordance with oral modifications of the parties but owed $26,000 in alimony from July, 1985, to April, 1986, when he had retired. The judge also found that Mrs. Clark was entitled to retain all of the proceeds from the sale of stock, but that Mr. Clark was entitled to be repaid for the house loan.

On appeal, Mrs. Clark contends that a written contract which contains an express bar against oral modifications may not be orally modified, that the modifications were void for lack of adequate consideration and were barred by the statute of frauds, and that there was no evidence the parties intended Mr. Clark's alimony obligations would terminate upon his retirement from the practice of law. Mr. Clark contends on appeal that the suit was barred by laches and that the agreement was mutually abandoned and rescinded by the parties. Upon review of the record, we affirm.

I

After approximately twenty-nine years of marriage, Mr. and Mrs. Clark separated in November, 1975, and were divorced on February 27, 1979. Shortly after their separation, on March 1, 1976, the parties executed a Property Settlement and Separation Agreement ("Agreement"). The Agreement was drafted by an attorney retained by Mrs. Clark following negotiations at which Mr. Clark, an attorney, represented himself. It purported to resolve all of the property issues involving the parties. It was neither ratified, approved by the court, nor merged into the divorce decree as the Agreement required.

The provision of the Agreement principally in dispute is paragraph 8. Under paragraph 8, Mr. Clark is obligated to pay Mrs. Clark alimony on the first day of each month in an amount equal to fifty percent of his "gross drawings ... in the preceding month." "Gross drawings" are defined as "monies drawn in [Mr. Clark's] discretion from earnings of the business in the preceding month" less certain enumerated deductions.[1] Paragraph 8 also provides that Mr. Clark's alimony obligations "shall continue until [Mrs. Clark] dies or (if the Parties are divorced) until [she] remarries, whichever event first occurs."

Undisputed evidence at trial showed that the parties failed to abide by many of the terms of the Agreement. They did not have the Agreement merged into the divorce decree as required by paragraph 15. More significantly for purposes of this appeal, the formula for determining alimony was never followed exactly. For example, shortly after executing the Agreement, the parties signed an amendment eliminating Mr. Clark's "discretion" to draw earnings and substituting a requirement that he "withdraw earnings commensurate with gross receipts"; the amendment was not notarized or executed with the formality required by paragraph 20. Accountings prepared by Mr. Clark for Mrs. Clark indicate, moreover, that Mr. Clark failed to make certain deductions from his gross drawings to which he was entitled under paragraph 8. Mr. Clark also made adjustments for numerous items not contemplated in paragraph 8. In addition, Mr. Clark failed to provide, and Mrs. Clark failed to take steps, beyond requesting Mr. Clark, to obtain financial statements and an accounting of deductions as required by paragraph 8(e)(ii). Mrs. Clark failed to review the accountings Mr. Clark provided with any financial advisor, and in writing she admitted, contrary to her testimony at trial, that she never requested Mr. Clark's tax returns pursuant to paragraph 8(f).

1. In the event Mr. Clark ceases "to be self-employed and does not become a partner in a partnership but becomes employed on a salaried basis, the term 'gross drawings' ... shall mean and include such salary paid in the preceding month by his employer, and any and all other income from whatever source derived, earned or unearned, less only certain deductions." Subparagraph (g) further provides that Mr. Clark's obligation to pay alimony to Mrs. Clark ceases upon his death, but his estate would be liable for any arrearages.

Early in February, 1980, the parties met to discuss alternate arrangements to paragraph 8's alimony formula. They agreed that Mr. Clark would pay Mrs. Clark a fixed monthly amount. Mr. Clark testified that the fixed monthly payment (part of which was prepaid at the start of the year) was to be in discharge of his obligations to pay alimony under paragraph 8 without regard to his income or draws. Mrs. Clark disputed this, testifying that only the method of payment, "not the amount or the formula," was to be changed, and that she was still to receive a payment at the end of each year based on the formula in paragraph 8. Mr. Clark paid Mrs. Clark an average of approximately $4,500 per month from April, 1980, through 1983. Mrs. Clark also received $1,000 in March, 1980.

The parties met again on December 15, 1983, and thereafter to discuss the level of alimony. Mr. Clark testified that they agreed to reduce the fixed monthly alimony payment to $4,000 per month, and, at Mrs. Clark's request, he prepaid the initial five months of alimony in one check. Near the end of 1984 they reduced the fixed monthly payment to $3,500, and Mr. Clark again prepaid the initial six months of alimony in one check.

In February, 1985, in anticipation of his retirement, Mr. Clark initiated discussions with Mrs. Clark seeking further modification of the alimony payments. Mr. Clark's law practice before the Interstate Commerce Commission was drawing to a close as the result of congressional deregulation; he was also having trouble reading as the result of poor eyesight notwithstanding two operations for cataracts. The parties exchanged at least five letters and had numerous conversations in an attempt to arrive at a final settlement. In a letter dated June 26, 1985, Mr. Clark presented a comprehensive proposal. Mrs. Clark noted her approval to the proposals calling for alimony of $2,500 per month for the last half of 1985 and $1,500 per month as long as Mr. Clark was practicing law full time, but not to the remainder of the proposal, including a proposal to reduce alimony to $500 per month when he ceased full-time practice; instead Mrs. Clark wrote that she

intended to make a comprehensive counterproposal. Before this happened, however, Mr. Clark withdrew the unaccepted portions of the June proposal. Mr. Clark admitted he was aware that the parties never entered into a complete and final settlement. Mr. Clark paid Mrs. Clark $2,500 per month in July and August, 1985, and $500 per month thereafter until his retirement in April, 1986.

With respect to Mr. Clark's counterclaim, the undisputed evidence showed that in 1976 Mr. Clark loaned Mrs. Clark over $40,000 at eight percent interest to acquire a residence which was to be repaid out of the proceeds from the sale of a beach house belonging to Mrs. Clark under the Agreement. After selling the beach house, Mrs. Clark repaid $20,000 in 1978 and thereafter, from October, 1978, to March, 1980, paid only $3,600. The evidence also showed that in 1980 Mrs. Clark sold shares in the Putnam Growth Fund for approximately $8,000 and did not pay Mr. Clark one-half of the proceeds as required by paragraph 4 of the Agreement; Mr. Clark did not dispute Mrs. Clark's testimony, however, that when she asked for more money he had suggested she sell the shares and keep all the proceeds.

The trial judge did not credit Mrs. Clark's testimony that the parties had agreed in 1980 only to modify the payment method and not the amount of the alimony, and found that the parties had modified paragraph 8 of the Agreement to allow Mr. Clark to pay a fixed monthly amount beginning in April, 1980, averaging $4,500 a month in 1980, 1981, 1983 and slightly more in 1982. The judge also found that this amount had been reduced by agreement of the parties to $4,000 for most of 1984 and to $3,500 thereafter, but that they had failed to agree to modify the amount of $3,500. Although "[n]o evidence was introduced as to the contemplated date that alimony would cease," the judge interpreted the Agreement as providing for Mr. Clark's obligation to pay alimony to cease upon his retirement.

Accordingly, the judge ruled that the parties had validly modified the Agree-

ment, and that, assuming the modification required consideration, there was adequate consideration, and that modification of paragraph 8 was not barred by the statute of frauds. The judge rejected Mr. Clark's defenses and his counterclaim for proceeds from the sale of stock. The judge awarded Mrs. Clark $26,000 for arrearages in alimony accruing from July, 1985 to April, 1986, and Mr. Clark $28,186 with interest at eight percent to date of payment, less $3,600 paid by Mrs. Clark from October 27, 1978 to March 7, 1980.

## II

Mrs. Clark contends that the trial judge erred in ruling that a written contract which contains an express provision barring oral modifications may be orally modified. Although not disputing the general rule that a written contract with such a clause is subject to oral modification, she urges that we adopt an exception to the rule of *Nickel v. Scott,* 59 A.2d 206 (D.C. Mun.App.1948). As we understand the argument, she contends that such a rule is inappropriate in a domestic relations situation as existed here. Not only was Mr. Clark an attorney, and she was not, but she trusted his assurances and feared his rebuffs and threats of costly litigation when she asked for information to which she was entitled under the Agreement. Further, she did not understand that her actions constituted a waiver of her rights under paragraphs 17 (noncondonation of future breaches) and 20 (formal requirements for modification) to insist on compliance with the Agreement notwithstanding past variances, and should be allowed, as a lay spouse, to rely on the plain language of these provisions. She also relies on the parties' testimony, and the evidence of Mr. Clark's attempts to get her to approve a formal written comprehensive modification to the Agreement, as demonstrating that they recognized the restrictions on amending it. Therefore, she claims there was no clear evidence that the parties knew the prohibition against oral modifications in paragraph 20 could be waived and that by their actions they were waiving it.

A separation agreement which is not merged in the final judgment of divorce is governed by the law of contracts. *Spencer v. Spencer,* 494 A.2d 1279, 1285 (D.C.1985). Under contract law, it is well-settled that a written contract may be orally modified or rescinded by a subsequent oral agreement, even where the contract contains express language prohibiting oral modification. *Nickel v. Scott, supra,* 59 A.2d at 207. The justification for this rule is that the existence of an express bar against oral modification does not remove the parties' continuing rights to contract anew on the subject and to modify or rescind the oral modification provision like any other term of the contract. *Id.; accord, Hoffman v. Glock,* 20 Md.App. 284, 287, 315 A.2d 551, 554 (1974); *cf. Clurman v. Clurman,* 84 Misc.2d 148, 152, 373 N.Y. S.2d 951, 957 (Sup.Ct.1975), *aff'd,* 51 A.D. 2d 915, 382 N.Y.S.2d 281 (1976) (power to modify agreement incorporated in divorce decree cannot be restricted by a contrary stipulation in original agreement).

Ample evidence was presented at trial to support the trial judge's finding that the parties routinely ignored many of the Agreement's terms, including the prohibition against oral modifications, and in fact orally modified the Agreement's alimony formula several times. There was even written evidence in Mrs. Clark's correspondence that "alimony was reduced." The trial judge's findings are entitled to be treated as presumptively correct unless they are clearly erroneous or unsupported by the record. *Spencer v. Spencer, supra,* 494 A.2d at 1286. That Mrs. Clark offered testimony which would support different findings is insufficient grounds on which this court can reverse the trial judge's factual findings, particularly where issues of credibility are presented; Mrs. Clark, unlike Mr. Clark, was impeached on several occasions with her deposition.

Mrs. Clark did not deny that she could have contacted counsel, sought advice from her tax accountant, or stated her position in writing during the years at issue. Although she completed a college education, traveled abroad, and was clearly able to

look out for herself, at no time before August, 1985, did she take any steps to protect her rights under the Agreement. Contrary to her contention on appeal, neither the trial judge nor this court condone hypothetical oral modifications by a defaulting spouse of an otherwise unmodifiable agreement; nor do we accept the proposition that a spouse who is capable, intellectually and financially, of protecting rights under an agreement may accede to modifications for over nine years and thereafter successfully repudiate that assent by reinstating the original agreement either retroactively or prospectively. Had the Agreement been merged in the parties' divorce decree, of course, different rules of law would apply. *See, e.g., Norris v. Norris*, 473 A.2d 380, 381 (D.C.1984) (a court has no authority to modify a separation agreement which was not merged with the divorce decree). The Agreement called for its merger in the divorce decree but Mrs. Clark made no effort to assure that a merger occurred. Even under the test of *Le Bert–Francis v. Le Bert–Francis*, 194 A.2d 662, 663–64 (D.C.1963), which she contends should apply to modifications of separation agreements, we would be unpersuaded that the trial judge clearly erred in not finding evidence of overreaching and concealment by Mr. Clark which would render the modifications void. The evidence supported a conclusion that modifications were "fairly and voluntarily made," *id.* at 663; Mrs. Clark only tried to repudiate the modifications when Mr. Clark reduced his alimony payments to $500 per month.

That the trial judge found the parties' discussions and correspondence in 1985 did not result in a final and complete settlement of all outstanding issues does not, as Mrs. Clark contends, prevent a finding that they had validly modified the Agreement previously. Her reliance on *Edmund J. Flynn Co. v. LaVay*, 431 A.2d 543 (D.C. 1981), is misplaced; that case stands only for the proposition that "[t]o be final, contract negotiations must include all of the terms which the parties intended to resolve." *Id.* at 547. The record is clear that the only Agreement term the parties undertook to modify and the only issue they intended to resolve in their pre–1985 negotiations was the amount of alimony payable to Mrs. Clark. Based on the evidence, the trial judge could properly conclude that the parties orally modified the level of alimony in April, 1980, in December, 1983, and again near the end of 1984. The fact that their 1985 negotiations did not result in any further modification of the alimony payments does not viscerate their earlier modifications.

### III

We also find no merit to Mrs. Clark's contention that the trial judge erred in finding that the modification of paragraph 8 was supported by adequate consideration and not barred by the statute of frauds.

Since a non-merged property settlement is subject to the law of contracts, Mrs. Clark correctly maintains that consideration is required for a modification to the Agreement. But when a contract is fully executed it is valid even if it lacked consideration. *Sloan v. Sloan*, 66 A.2d 799, 801 (D.C.Mun.App.1949). Mr. Clark paid and Mrs. Clark received alimony payments at the modified levels without protest, and hence the modifications would no longer fail for lack of consideration. In any event, the evidence supports the trial judge's finding of consideration in the predetermined amount of alimony regardless of Mr. Clark's actual earnings, the prepayment of alimony in lump sums for the first months of the year, and the receipt of a $1,000 bonus for agreeing to the modification. *Riggs v. Aetna Ins. Co.*, 454 A.2d 818, 821 (D.C.1983) (courts will not inquire into the adequacy of consideration). Mrs. Clark's reliance on the exception for agreements to exchange grossly disproportionate sums of money, *Sloan v. Sloan, supra*, 66 A.2d at 800, is misplaced because no exchange of money occurred.[2] Mrs. Clark

**2.** Plaintiff's Exhibit 4, an accountant's calculation of alimony under paragraph 8 from 1978 to 1985, to which Mr. Clark stipulated, showed that

Mr. Clark, on the basis of the formula, would have paid additional alimony of $55,616 in 1980, $102,176 in 1981, $143,614 in 1982, $154,-

received as consideration the non-monetary benefit of the elimination of risk to her of an anticipated decline in Mr. Clark's income because of deregulation. The trial judge found that due to the impending decrease in Mr. Clark's practice, it was unclear at the time of the modification whether Mrs. Clark would receive more or less alimony under the modification than under the original Agreement. Calculating the amount of alimony she arguably could have received had the parties not modified the level of payments does not bring this case within the exception.

■ Nor were the oral modifications of the alimony formula in paragraph 8 barred by the statute of frauds.[3] The language in paragraph 8 which permits Mr. Clark to deduct certain expenses for an apartment from his gross drawings until it is sold or rented cannot be reasonably construed as a promise to convey an interest in real property which would require a writing sufficient to satisfy the statute of frauds. *See* D.C.Code § 28–3502 (1981). Further, a contract capable of performance within one year is not within the statute of frauds. *Cooper v. Saunders–Hunt,* 365 A.2d 626, 629 (D.C.1976). Pursuant to paragraph 8(a) and (g), Mr. Clark's alimony obligations terminate upon Mrs. Clark's death or remarriage, or upon Mr. Clark's death. Since any of these events, as well as his

retirement, could have occurred within one year after the parties' divorce, the Agreement modifications were not barred by the statute of frauds. *See Launay v. Launay, Inc.,* 497 A.2d 443, 449 n. 4 (D.C.1985) (statute of frauds inapplicable since agreement was capable, possible, or susceptible of performance within one year).

## IV

■ Finally, we find no error by the trial judge in determining that the modified alimony payments would cease upon Mr. Clark's retirement.[4] Mrs. Clark argues that the judge not only erred in finding that Mr. Clark retired on April 30, 1986, but could not make that determination in the absence of evidence as to when alimony would terminate. However, her complaint for specific performance presented the trial judge with the issue of contract interpretation, and in accordance with *Spencer v. Spencer, supra,* 494 A.2d at 1286, and *Connelly v. Methodist Home,* 190 A.2d 550, 551 (D.C.1963), the trial judge could properly interpret the Agreement as requiring Mr. Clark to pay alimony until he retired from his law practice.

The trial judge found evidence of the parties' intent that Mr. Clark's alimony obligation ceased upon his retirement from law practice in (1) the provision elsewhere in the Agreement for Mrs. Clark's financial

302 in 1983, $133,148 in 1984, and $97,993 in 1985, as well as lesser amounts in 1978 and 1979.

3. Mr. Clark asserts that Mrs. Clark failed to affirmatively plead the statute of frauds in her pleadings and has therefore waived the defense. *See* Super.Ct.Civ.R. 8(c). Although Mrs. Clark failed to affirmatively plead the statute of frauds in her reply to counterclaim, she was arguably deprived of an opportunity to do so in a response to Mr. Clark's amended answer and counterclaim since his amended answer was accepted in open court the day of trial. This court has held that "there is room for flexibility in [Super.Ct.Civ.] Rule 8(c), and where no prejudice results from a party's failure to adhere to the letter of the rule, a defense should not be lost." *Jackson v. District of Columbia,* 412 A.2d 948, 951 (D.C.1980). Mr. Clark is not prejudiced by Mrs. Clark's assertion of the statute of frauds defense in this court because the issue was argued at trial and Mr. Clark failed to object on the basis of Rule 8 (c) at that time.

4. As the party seeking specific performance of a separation agreement, Mrs. Clark bore the burden of proof regarding the extent of Mr. Clark's alimony obligation. Although the absence of proof (other than the original Agreement) as to when alimony would cease was not called to the attention of the trial judge, the judge nevertheless was in a position to make such a finding by interpreting the Agreement's provisions. Since the trial judge's interpretation is supported by evidence in the record, Mr. Clark's assertion that Mrs. Clark has waived the right to raise this issue on appeal is unavailing. *See Brooks v. Jensen,* 73 A.2d 32, 33 (D.C.Mun.App.1950) (with limited exceptions, matters not raised and passed upon in the trial court afford no basis for review on appeal); *Zindler v. Buchanon,* 61 A.2d 616, 617 (D.C.Mun.App.1948) (appellate courts are established for the correction of the errors of trial courts).

security, referencing the provisions of paragraph 4 requiring Mr. Clark to divide his Keogh Plan benefits, see note 6, *infra,* equally with Mrs. Clark as an example, (2) an intention of the parties during their unsuccessful negotiations to develop a comprehensive modification to the Agreement in 1985, and (3) the fact that Mr. Clark would have no "draw" under paragraph 8. The alimony formula was based upon Mr. Clark's gross drawings from his law practice which, by definition, would terminate upon his retirement. Subparagraph (b)'s reference to "any and all other income from whatever source derived," see note 1, *supra,* applied only in the event Mr. Clark became a partner in a law firm or employed on a salaried basis. The parties' negotiations in 1985, although ultimately unsuccessful, also offered some corroborative evidence of their intent.

Moreover, the trial judge's finding that the monthly alimony payments, as modified by the parties, terminated on April 30, 1986, is supported by the record and not clearly erroneous. Mr. Clark testified that he was "technically" practicing law until that date but that he had no work at the time of trial (April 8–9, 1986); that he had decided to discontinue the practice of law as of April 30, 1986, and to sell his office furnishings; that he had given his landlord notice of termination of his lease; and that he sold his home in March, 1986. Mrs. Clark did not challenge this testimony. Although it is conceivable that Mr. Clark might undertake some form of law practice in the future, no evidence was offered to suggest that he contemplated doing so.

## V

We turn to Mr. Clark's defenses and counterclaims.

■ First, Mr. Clark contends that the trial judge erred in finding that Mrs. Clark's claims were not barred by laches. In reviewing this finding, this court must sustain the trial judge's finding unless it is clearly erroneous. *Padgett v. Padgett,* 472 A.2d 849, 851 (D.C.1984). "Whether the facts, taken together, are sufficient to sustain the defense of laches, however, is a question of law which [this court] will review without need for deference to the trial court's judgment." *Id.* (quoting *American University Park Citizens Ass'n v. Burka,* 400 A.2d 737, 741 (D.C.1979)). To support a claim of laches there must be evidence of an undue and unexplained delay in bringing an action, which resulted in prejudice to the defendant. *Schmittinger v. Schmittinger,* 404 A.2d 967, 970 (D.C.1979); *Amidon v. Amidon,* 280 A.2d 82, 84 (D.C.1971). The trial judge found that Mr. Clark failed to establish either element, and we find no clear error.

■ The trial judge found that Mrs. Clark's delay in bringing the suit was not unreasonable. Although the Clarks were no longer a family during the years at issue, the judge observed that Mrs. Clark had a "high degree of confidence in Mr. Clark which may have delayed the suit's initiation." "[I]n considering questions of laches, the utmost leniency is manifested by the courts where it appears that the delay is due to the intimate personal relations existing between the parties and the high degree of confidence reposed by one in another." *Major v. Shaver,* 88 U.S.App. D.C. 148, 149, 187 F.2d 211, 212 (1951) (quoting *Horton v. Horton,* 63 App.D.C. 375, 376, 72 F.2d 831, 832 (1934)). Despite their differences, the evidence indicated that the parties were on friendly terms.[5] In addition, the trial judge found that Mr. Clark was not prejudiced. Not only is there nothing to suggest his ability to present evidence was adversely affected by the delay, but there is no evidence that he had changed his position in a manner that otherwise would not have occurred. The trial judge found that Mr. Clark's current

5. The trial judge also noted that Mrs. Clark's delay was not unreasonable in light of the fact that there were seven years remaining before the applicable statute of limitations would have run. D.C.CODE § 12–301(6) (1981) (twelve years for contracts under seal). Although the statute of limitations is not determinative as to whether the equitable doctrine of laches may be invoked, *Amidon v. Amidon, supra,* 280 A.2d at 84, it offers an appropriate referent for guidance in determining what an unreasonable length of time might be.

assets were clearly adequate to pay the arrearages which he owed.[6]

 Second, Mr. Clark contends that the trial judge erred in finding that the Agreement was not mutually abandoned and rescinded by the parties in light of their pattern of ignoring some of its important provisions. A property agreement can be rescinded by mutual consent of the parties, and an agreement to rescind may be evidenced by the conduct of the parties as well as by an express agreement. *Sirianni v. Sirianni,* 338 A.2d 101, 103 (D.C. 1975); *Cooper v. Cooper,* 35 A.2d 921, 923 (D.C.Mun.App.1944). But a finding of rescission must rest upon the existence of an unqualified refusal to perform the contractual obligations. *Cooper v. Cooper, supra,* 35 A.2d at 924. No such evidence exists in the instant case. "A mere dispute as to the manner of the performance [or] a misunderstanding as to the manner in which it shall be performed ... does not justify a rescission by the other party." *Id.* Although the parties failed to follow many of the Agreement's provisions, the evidence reflects that throughout their dealings they recognized that they were bound by the Agreement. Their modifications of paragraph 8 and their negotiations to amend the Agreement further in 1985 indicate that they believed the basic Agreement was still in place. The trial judge's finding that the Agreement was not mutually

abandoned and rescinded is supported by the evidence and is not clearly erroneous.[7]

Accordingly, the judgment is affirmed.[8]

---

6. The trial judge found that Mr. Clark has substantial assets although his current wife has an interest in his real estate. He owns a retirement Keogh account which has a value of $241,000 and earns nine percent interest; a Lincoln Continental automobile; a one-half interest as a tenant in common in a condominium in Florida; equity of at least $70,000 in property in Washington, D.C.; and equity of approximately $120,000–$130,000 in another home with his current wife in Delaware.

7. Mr. Clark's reliance on *Cooper v. Cooper, supra,* 35 A.2d 921, and *Willcher v. Willcher,* 294 A.2d 486 (D.C.1972), is misplaced. In *Willcher,* the court found a rescission where the wife failed to insist upon the enforcement of the terms of a separation agreement in an earlier action by the husband to reduce the level of alimony. *Id.* at 489. Similarly, in *Cooper v. Cooper,* neither party relied upon their separa-

tion agreement in their earlier divorce case. 35 A.2d at 923. Mr. and Mrs. Clark acted at all times under the basic assumption that the Agreement was in effect.

8. Mrs. Clark also appeals the trial judge's denial of attorney's fees under paragraph 21 of the Agreement on the ground there was evidence that both parties had breached the Agreement. In view of the trial judge's findings, which we affirm, that the parties orally modified the Agreement on several occasions and that Mr. Clark owed over $26,000 for arrearages in alimony, we find no clear error by the trial judge in finding that neither party substantially breached the Agreement. Hence paragraph 21 does not come into play. Mrs. Clark's citation to authorities fixing the amount of an award is irrelevant to whether an award should be made. *Steadman v. Steadman,* 514 A.2d 1196, 1200–01 (D.C.1986).