J-S43012-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CALVIN LAMAR NORRIS | |
| Appellant | No. 1604 WDA 2017 |

Appeal from the Judgment of Sentence imposed September 29, 2017
In the Court of Common Pleas of Mercer County
Criminal Division at Nos: CP-43-CR-0001475-2016;
CP-43-CR-0001476-2017

BEFORE:   STABILE, DUBOW, and NICHOLS, JJ.

MEMORANDUM BY STABILE, J.:                    FILED DECEMBER 11, 2018

Appellant, Calvin Lamar Norris, appeals from the September 29, 2017 judgment of sentence imposing life in prison without parole for first degree murder and a consecutive by 8½ to 20 years of incarceration for aggravated assault.  We affirm.

Appellant's convictions arose from two shootings that occurred around 11:30 p.m. on August 14, 2016.[1]  Victim Kimberly Odem testified that she bought crack cocaine from Appellant earlier on the day of the crimes.  The crack turned out to be fake, and Odem and her boyfriend, deceased victim Percy Godfrey, had an altercation with Appellant on the same evening, a few

─────────────────────────────

[1]  Unless another source is cited, we have relied on the facts recited in the trial court's March 15, 2018 opinion.

hours prior to the shootings. Surveillance video from 10:30 on the evening of the shootings depicted Appellant entering a convenience store appearing as though he had been in an altercation.

Just before she was shot on the northeast corner of New Castle Street in Sharon, Pennsylvania, Odem heard someone call her name. She turned to look, and Appellant opened fire, hitting Odem in the jaw, left hand, and shoulder. Police recovered three nine-millimeter casings near the site of the Odem shooting. Odem had known Appellant for approximately ten years, and she consistently identified him as the shooter. Odem was hospitalized for two months and, as of the time of trial, needed several additional surgeries.

No eyewitness observed the fatal altercation between Appellant and Godfrey, but it took place very shortly after the shooting of Odem. Neighbors reported hearing two or three shots, a pause, and then an additional series of shots fired. Police found Godfrey's corpse roughly 150 feet from the site of the Odem shooting. Godfrey suffered bullet wounds in the leg and in the abdomen. Both bullets entered Godfrey's body from behind. The fatal shot entered Godfrey's left mid-back and exited the right front of his lower chest. The bullets were not fired from point blank range. Police recovered eight spent nine-millimeter casings approximately 62 feet from Godfrey's body. Appellant suffered a stab wound in the abdomen, and police found a knife in Godfrey's hand with Appellant's blood on it. The convenience store surveillance footage

from earlier in the evening did not depict Appellant bleeding from the abdomen.

Shortly after the shootings, Appellant knocked on the door of his aunt, Regina Norris, who lived very near the crime scene. There, he asked his cousin, Alvin Hancock, Jr., to drive him to a hospital in Youngstown, Ohio, rather than Sharon Regional Hospital. Appellant claimed he had been stabbed after having oral sex with another man's girlfriend. Appellant and Hancock arrived at St. Elizabeth Hospital in Youngstown shortly after midnight on August 15, 2016. Surveillance video depicted Appellant walking across a parking lot from Hancock's car to the hospital entrance with no obvious impairment.

Corporal Randolph Guy of the Pennsylvania State Police interviewed Appellant in the hospital at 7:20 a.m. on the morning of August 15, 2016 after having interviewed family members of the shooting victims. Corporal Guy wore plain clothes and did not give Appellant Miranda[2] warnings. The interview lasted five to ten minutes. Appellant claimed he was stabbed a few blocks from the hospital.

Police retrieved a nine-millimeter Luger handgun from underneath some other items on Norris' front porch. DNA testing revealed that Appellant's DNA was on the gun. Crime lab analysis established that the 11 nine-millimeter

_____

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

casings recovered from the scenes of the Odem and Godfrey shootings were fired from the Luger handgun.

Appellant filed pretrial motions seeking to suppress his statements to police at the hospital and the results of a gunshot residue test performed at the hospital, and seeking to admit evidence of Godfrey's prior convictions. The trial court denied suppression, permitted Appellant to introduce Godfrey's 2013 terroristic threats conviction, and refused to permit introduction of Godfrey's 1989 involuntary manslaughter conviction. On July 18, 2017, a jury found Appellant guilty of the aforementioned offenses. The trial court imposed sentence on September 29, 2017, and this timely appeal followed.

Appellant raises seven assertions of error:

I.     Whether the trial court erred when it concluded that [Appellant] was not under custodial interrogation at the time he was questioned and made statements against his interest to Corporal Guy at St. Elizabeth's Hospital when, at the time, he was under a police hold and a suspect in the shootings of Godfrey and Odem.

II.    Whether the trial court erred when it concluded that [Appellant] was not under custodial interrogation and that his consent was voluntary when the Youngstown Police conducted a [Gun Shot Residue ("GSR")] test on [Appellant's] hands at St. Elizabeth's Hospital when, at the time, he was under a police hold, a suspect in the shootings of Godfrey and Odem and under the effects of medication following surgery.

III.   Whether the trial court erred when it denied [Appellant's] request to introduce [Pa.R.E.] 404(b)(2)(B) character evidence of Godfrey in the form of a 1989 conviction of involuntary manslaughter in Ohio when self-defense was properly alleged.

IV.    Whether [Appellant] negated a conviction of first-degree murder when he presented the expert testimony of Dr. Karl Williams who opined that at the time of the shootings [Appellant] lost his sensibilities due to alcohol intoxication.

V.    Whether there was sufficient evidence that [Appellant] acted in self-defense from Godfrey and whether the Commonwealth failed to prove [Appellant] was not acting in self-defense when [Appellant] was stabbed by Godfrey at the time of the shooting.

VI.    Whether the Commonwealth produced sufficient evidence to prove [Appellant] formed the specific intent to commit murder of the first degree of Godfrey and whether [Appellant's] voluntary intoxication and/or act of self-defense negated any intention to kill.

VII.    Whether the Commonwealth produced sufficient evidence to prove [Appellant] formed the intent to commit aggravated assault on Odem when evidence was presented that showed [Appellant] acting in self-defense toward Godfrey.

Appellant's Brief at 15-17 (Numeration ours).

Appellant's first two arguments challenge the trial court's denial of his motion to suppress evidence. We conduct our review as follows:

[O]ur standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is de novo. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

Commonwealth v. Yandamuri, 159 A.3d 503, 516 (Pa. Super. 2017).

First, Appellant argues the trial court erred in admitting the statements he made to Corporal Guy because Corporal Guy subjected him to a custodial interrogation without Miranda warnings.

> A police encounter becomes an arrest when, under the totality of the circumstances, the detention becomes so coercive that it is the functional equivalent of an arrest. The numerous factors used to determine whether a detention has evolved into an arrest include the cause for the detention, the detention's length, the detention's location, whether the suspect was transported against his or her will, whether physical restraints were used, whether the police used or threatened force, and the character of the investigative methods used to confirm or dispel the suspicions of the police. Custodial interrogation has been defined as questioning initiated by the police after a person has been taken into custody or otherwise deprived of his or her freedom of action in any significant way. Further, an interrogation" occurs when the police should know that their words or actions are reasonably likely to elicit an incriminating response from the suspect.

Commonwealth v. Clinton, 905 A.2d 1026, 1032 (Pa. Super. 2006) (internal citations and quotation marks omitted; emphasis in original).

Corporal Guy was aware that Appellant was suspected in the shootings of Odem and Godfrey, having visited the crime scene, spoken with other officers, and interviewed victims' family members. Supplemental Findings of Fact, 6/7/17, at p. 12. Wearing plain clothes, he asked Appellant to explain how he was stabbed. Partial Findings of Fact, 4/12/17, at ¶ 25. Appellant told Guy that he believed he was stabbed somewhere near St. Elizabeth Hospital in Youngstown while walking to his cousin's house. Id. at ¶ 22. Appellant could not identify the cousin or the person who stabbed him. Id. Corporal Guy was unaware that Appellant had an outstanding arrest warrant

in Farrell, Pennsylvania, and that he did not believe he had authority to arrest Appellant at the hospital in Ohio. Id. at ¶ 21. Nonetheless, Corporal Guy would have made efforts to have Appellant detained had Appellant tried to leave the hospital. Id. Appellant was not restrained or under guard, and the interview lasted five to ten minutes. Id. at ¶¶ 21, 26. Appellant notes that he was recovering from a major surgery (a bowel resection), heavily medicated, and unable to leave the hospital for that reason.

In Commonwealth v. Fento, 526 A.2d 784 (Pa. Super. 1987), appeal denied, 535 A.2d 875 (Pa. 1988), the defendant was in a hospital emergency room, confined to a bed, and receiving treatment after a single-car driving accident. Id. at 785. The defendant confirmed that he was driving the vehicle and that he drank several beers prior to driving. Id. at 786. The police trooper noted the smell of alcohol on the defendant's breath, bloodshot eyes, and slurred speech. Id. The interview was part of routine accident investigation. Id. at 787. The police officer did not suspect the defendant of a crime until he noticed his eyes and the smell of alcohol. Id. The officer sought and received permission from hospital personnel to interview the defendant, the interview lasted five minutes, and Appellant was not under any guard. Id. The Fento Court noted that the defendant became the focus of an investigation when the officer noted the defendant's obvious drunkenness, but found no other evidence of a custodial interrogation. Id. The Fento Court distinguished Commonwealth v. Fisher, 352 A.2d 26 (Pa. 1976), in which

the defendant had been under guard for 48 hours before finally incriminating himself during his third interview. Id.

In Commonwealth v. Whitehead, 629 A.2d 142 (Pa. Super. 1993), on the other hand, police had investigated the scene of an accident and suspected the defendant of drunk driving prior to arriving at the hospital to interview him. The officer smelled alcohol on the defendant's breath and observed his staggering gait at the scene prior to placing the defendant on an ambulance. Id. at 143. The officer specifically asked the defendant whether he had been drinking. Id. He arrested the defendant at the conclusion of the interview. Id. We concluded that the officer subjected the defendant to a custodial interrogation:

> While the initial questions were general, we agree that the clear intent was to obtain incriminating admissions while appellee was not freely capable of leaving and was fearful of not cooperating. The statement was made after prompting and followed questions designed to obtain incriminating statements. No formal declaration of arrest is required in order for an individual to conclude that he is in custody.

Id. at 145.

In view of the totality of the circumstances, we cannot conclude the trial court erred in finding no custodial interrogation. Instantly, Corporal Guy, having been to the crime scene and spoken to several other officers, was aware that Appellant was a suspect in the shootings of Odem and Godfrey. Nonetheless, the interview was brief, it took place in a hospital to which Appellant travelled of his own free will, and Corporal Guy did not prompt

Appellant to discuss the shootings. Rather, he simply asked Appellant about his injury. Police were not guarding or restraining Appellant in any way, and Corporal Guy made no show of force. Corporal Guy did not arrest Appellant, but would have made efforts to detain Appellant had Appellant attempted to leave. As in Fento, most of the circumstances weigh against a finding of custodial interrogation.

Furthermore, we observe that Appellant's statement to Corporal Guy was incriminating only insofar as it was an obvious falsehood, potentially indicative of consciousness of guilt. Given the nature of Appellant's statement, and the overwhelming evidence of his guilt, we would conclude that any error in admitting it was harmless beyond a reasonable doubt. "The doctrine of harmless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt." Commonwealth v. Thornton, 431 A.2d 238, 251 (Pa. 1981). "Its purpose is premised on the well-settled proposition that '[a] defendant is entitled to a fair trial but not a perfect one.'" Id. (quoting Lutwak v. United States, 344 U.S. 604 (1953)).

> Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was de minimis; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

- 9 -

Commonwealth v. Hutchinson, 571 Pa. 45, 52–53, 811 A.2d 556, 561 (2002). Instantly, given Odem's eyewitness testimony, and the ballistics and DNA evidence, including Appellant's DNA on the murder weapon and Appellant's blood on Godfrey's knife, and Godfrey's false account to his cousin who drove him to St. Elizabeth's hospital, Appellant's statement to Corporal Guy was insignificant in comparison to the overwhelming evidence of his guilt.

Next, Appellant argues the trial court erred in admitting evidence of the GSR test taken at St. Elizabeth. The record reveals that Appellant consented, but he claims his consent was invalid because he gave it while he was recovering from a major surgery and still under the effects of sedation and painkillers. We need not address this issue on the merits because Appellant does not challenge the sufficiency of the evidence that he was the shooter. Indeed, his theory at trial and his arguments on appeal are that he was defending himself against Godfrey's knife assault and that he was too intoxicated to form the specific intent to kill. Moreover, Appellant's DNA was on the gun recovered from Norris's front porch, where Norris observed Appellant shortly after the shootings. Assuming without deciding that Appellant's consent to the GSR test was invalid, the admission of the results into evidence was harmless beyond a reasonable doubt.

Appellant next asserts that the trial court erred in refusing to admit Godfrey's 1989 involuntary manslaughter conviction into evidence. Godfrey received a sentence of 10 to 25 years for the Ohio conviction. Appellant

remained on supervision in Ohio until 2014. Appellant claims the conviction was relevant to bolster his self-defense theory and admissible under Commonwealth v. Amos, 284 A.2d 748 (Pa. 1971). That Court held that

> where a defendant alleges self-defense, he may use his deceased victim's criminal record either (1) to corroborate his alleged knowledge of the victim's quarrelsome and violent character to show that the defendant reasonably believed that his life was in danger; or (2) to prove the allegedly violent propensities of the victim to show that the victim was in fact the aggressor.

Id. at 751. The prior crime must be "of the same nature," and "not too distant in time." Id. at 752. "The decision in each case as to similar nature and remoteness [...] rests within the sound discretion of the trial judge." Id. In Commonwealth v. Beck, 402 A.2d 1371, 1373 (Pa. 1979), overruled in part by Commonwealth v. Christine, 125 A.3d 394 (Pa. 2015)[3] our Supreme Court held that the defendant need not have knowledge of the defendant's prior conviction to meet the second prong of the Amos test, i.e., that the victim had violent propensities and was the aggressor.

Instantly, the trial court held Godfrey's 1989 conviction inadmissible because Appellant failed to establish his knowledge of it and because it was too remote in time. As to the former, the trial court erred. Pursuant to Beck,

---

[3] The Supreme Court overruled Beck to the extent that it stood for the proposition that all prior assault convictions are sufficiently similar and thus admissible to demonstrate the victim's propensity for violence. Christine, 125 A.3d at 400 n.9. Courts must determine whether the facts of the prior act are sufficiently similar on a case-by-case basis. Id.

Appellant did not need to establish his knowledge of the 1989 conviction in order to establish that Godfrey had violent propensities and was the aggressor. As to the latter, we conclude the trial court acted within its permissible discretion in excluding the 1989 conviction as too remote in time. The trial court cited Commonwealth v. Quarles, 456 A.2d 188, 192 (Pa. Super. 1983) in which this Court noted that no Pennsylvania decision had ever admitted a victim's prior conviction that was more than three years old. The Quarles Court held the trial court properly excluded evidence of an undefined 22-year-old conviction. Id. at 192-93. This Court in Commonwealth v. Gilliard, 446 A.2d 951, 956 (Pa. Super. 1982), held the trial court properly excluded evidence of a murder victim's convictions of aggravated assault, attempted rape, burglary, and impersonating a police officer because those convictions predated the crime at issue by more than twenty years. We conclude that Appellant's assertion of error lacks merit.

In his fourth argument, Appellant claims the testimony of his expert witness, Dr. Karl Williams, of Appellant's intoxication was sufficient to negate Appellant's specific intent to kill Godfrey. Section 308 of the Crimes Code provides that a defendant's voluntary intoxication is not a defense except where it is relevant to reduce a murder conviction to a lower degree. 18 Pa.C.S.A. § 308. To succeed on a voluntary intoxication defense, the defendant must prove that he was "overwhelmed to the point of losing his faculties and sensibilities." Commonwealth v. Breakiron, 571 A.2d 1035,

1041 (Pa. 1990), cert. denied, 498 U.S. 881 (1990). This determination is for the jury. Id.

Dr. Williams testified that Appellant weighed 160 pounds and that his blood alcohol content ("BAC") was .228 percent when his blood was drawn at 12:41 a.m. at St. Elizabeth Hospital, more than one hour after the shootings. Appellant's BAC would have been around .256 at the time of the shootings. Dr. Williams concluded that Appellant was significantly impaired in all of his capabilities as of that time, and that any person with a BAC above .2 is grossly impaired. He would have expected Appellant to have slurred speech and be unable to walk across a parking lot without swaying. He also testified that some people develop a tolerance to alcohol and appear to not to be as impaired as they really are.

Nonetheless, the jury also heard evidence of Appellant's interaction with his cousin, Alvin Hancock, Jr., shortly after the shootings. Appellant appeared glossy eyed and drunk to Hancock. Nonetheless, Appellant had the presence of mind to concoct a false story, telling Hancock he was stabbed because he failed to pay for oral sex from another man's girlfriend. Subject to an outstanding warrant in Farrell, Pennsylvania, Appellant asked to be taken to an out-of-state hospital. Appellant got into Hancock's car under his own power, and he chose to walk across a parking lot at St. Elizabeth Hospital under his own power rather than have Hancock drop him off at the entrance. The jury observed surveillance video showing Appellant walking across the

parking lot without visibly swaying. When they arrived at St. Elizabeth, Appellant told Hancock he was okay. Officer Steven Gibson of the Youngstown Police Department interviewed Appellant shortly after his arrival at St. Elizabeth and Appellant once again gave a false account and denied knowing where or by whom he was stabbed.

The evidence of record supports a finding that Appellant's sensibilities were not so overwhelmed that he was unable to form the specific intent to kill. Appellant had the presence of mind to request a specific hospital and to give false accounts of his stabbing. Further, there is no evidence that Appellant was slurring his speech or staggering, as Dr. Williams testified that he should have been. The jury was free to credit the evidence demonstrating Appellant's presence of mind and control of his physical faculties, and reject Dr. Williams' testimony. Appellant's voluntary intoxication argument fails.

Next, Appellant argues the Commonwealth failed to disprove that Appellant acted in self-defense. The Pennsylvania Crimes Code provides in relevant part:

> (a) Use of force justifiable for protection of the person.-- The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.
>
> (b) Limitations on justifying necessity for use of force.—
>
> [...]
>
> > (2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary

to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be.

18 Pa.C.S.A. § 505(a), (b)(2).

Where the defendant properly raises a self-defense claim, the Commonwealth must prove beyond a reasonable doubt that the defendant did not act in self-defense. Commonwealth v. Smith, 97 A.3d 782, 787 (Pa. Super. 2014).

The Commonwealth sustains this burden if it establishes at least one of the following: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety.

Id. (quoting Commonwealth v. Hammond, 953 A.2d 544, 559 (Pa. Super. 2008), appeal denied, 964 A.2d 894 (Pa. 2009)).[4]

_____

[4] The following governs our review of the sufficiency of the evidence:

The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the

In support of his argument, Appellant notes that he was stabbed, that Godfrey was found with a knife in his hand, and that Appellant's blood was on that knife. I d. We agree with Appellant that the evidence clearly indicates that Godfrey stabbed him. Furthermore, we are willing to assume, for purposes of this issue only, that Godfrey was the initial aggressor. Even so, Appellant cannot obtain relief.

_____

crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

However, the inferences must flow from facts and circumstances proven in the record, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of an accused's guilt beyond a reasonable doubt. The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review.

Commonwealth v. Slocum, 86 A.3d 272, 275-76 (Pa. Super. 2014).

As explained above, witnesses heard two volleys of shots, with a pause in between. The first volley included two or three shots, and the second volley included more. Police recovered three nine-millimeter casings near where Odem was shot, and eight more closer to the location of Godfrey's body. Godfrey's body was found roughly 150 feet from the site of Odem's shooting, and more than 60 feet from the location where Appellant fired the eight additional shots. The two bullets that hit Godfrey entered his body from behind.

Thus, reviewing this evidence in a light most favorable to the Commonwealth as verdict winner, it appears that Appellant pursued Godfrey from the site of the Odem shooting and fired at him eight times. The fact that two bullets hit Godfrey from behind—and from outside of point blank range—establishes that Appellant was not in any immediate danger from Godfrey's knife, and that Godfrey was fleeing from Appellant's gunfire. We therefore conclude that the Commonwealth proved beyond a reasonable doubt that Appellant continued the use of force after force was no longer necessary for self-defense, and that Appellant could have retreated with complete safety. Appellant's self-defense argument fails.

Next, Appellant challenges the sufficiency of the evidence in support of his first degree murder conviction, arguing that his voluntary intoxication and/or self-defense arguments negated his specific intent to kill. This

argument is simply a brief restatement of two arguments we have already rejected. Appellant therefore cannot obtain relief.

In his seventh and final argument, Appellant challenges the sufficiency of the evidence in support of his aggravated assault[5] of Odem. He claims that he shot Odem in the course of defending himself from Godfrey's knife assault. As noted above, Odem testified that she heard a voice call her name, turned to look, and Appellant opened fire on her. The jury was entitled to credit Odem's eyewitness testimony, and her testimony by itself is more than sufficient to prove beyond a reasonable doubt that Appellant did not shoot Odem in self-defense. There is no evidence that Godfrey stabbed Appellant before he shot Odem. Appellant's argument fails.

Because we have found all of Appellant's arguments lacking in merit, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Dubow and Judge Nichols concur in the result.

_____

[5] Aggravated assault occurs where the defendant "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme difference to human life." 18 Pa.C.S.A. § 2702(a)(1).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/11/2018</u>